Gaston, Judge,
 

 after stating the case as above, proceeded as follows: — Upon this case it is necessary in the first place, to ascertain the effect of the qualifications and restrictions imposed by the deed of settlement upon the use or beneficial interest thereby secured to Hezekiah Pitchford. The deed provides, that the trustee shall annually, during the life of the said Hezekiah, apply all the .rents and profits to his use and benefit The trustee has no
 
 discretion
 
 over these proceeds, and they belong wholly to the said Hezekiah. The deed does not provide that in the event of the said Hezekiah attempting to sell or dispose of the same, or otherwise to anticipate the receipt thereof, that they shall then go over and be paid to some other person; it secures to him, at all events, the enjoyment of the property for life, but prohibits him from transferring it, or anticipating its profits. Now the general right of the giver of property to prescribe the modifications of his
 
 *484
 
 gift, is subject to the condition, that these modifications be not contrary to law, nor repugnant to the nature of the conveyance; nor incompatible with the legal incidents . f , . , mi r. belonging to the disposition he has made. 1 he power ot alienation is a legal incident of ownership. It is familiar doctrine, that if a feoffment, grant, release, confirmation, or devise, be made upon condition not to alien the estate; or if a term f°r years or chattel personal be granted, upon condition not to assign, such conditions are altogether nugatory. The doctrine obtains not less in courts of eqUity, acting upon those interests which are the proper subject-matter of their jurisdiction, than in courts of law adjudicating upon legal interests. A departure from it would introduce endless confusion, and innumerable mis-chiefs. The capricious regulations which individuals would fain impose on the enjoyment and disposal of property, must yield to the fixed rules which have been prescribed by the supreme power, as essential to the useful existence of property. If under the settlement, a legal estate had been limited to Hezekiah Pitchford for life, he would have taken that estate as one in its nature alienable; and the prohibition against alienation would have been absolutely void. The exclusive right, enforced through the trust imposed on the legal proprietor, to receive the profits of the property thereby conveyed, is, in equity, the estate in that property; and equity must hold a prohibition to dispose of what is
 
 his,
 
 as wholly inoperative.
 

 Thepower if nexed to shipTf161" property, restraint^ upon such voidT'as the estate1 is equita-whenitis legal.
 

 No doubt, the peculiar provisions in this deed have been borrowed from those restraints upon alienation, and upon anticipation of profits, which in England, and in comparatively modern times, have been introduced into settlements for the separate use of married women, ip order to protect them against the undue influence of their husbands. By the common law, upon marriage, the personal property of the wife becomes the property of the husband, and he is entitled to all the rents and profits of her real estate. But in equity, a separate and exclusive property may be secured to her in personal estate, and in the rents and profits of real estate. Equity, for these purposes, confers
 
 *485
 
 upon her a capacity which she has not at law, and regards her as a
 
 feme sole,
 
 so far forth as the settlement makes her the owner of the property. It has been held, by great judges, that this capacity being the creature of equity, may be so moulded by equity, as not to permit it to be abused to purposes for which it was not bestowed. Upon this reasoning, these restraints upon married women have been upheld. Other eminent judges have disapproved of this reasoning, and insisted, that if equity allows a wife to hold property, as though she were a
 
 feme sole,
 
 the property so held should be subject to all the incidents which belong to the like property in the hands of a
 
 feme
 
 sole.. Whichever party may have had the advantage in the argument, authority lias settled the controversy in that country. The first instance of express and effectual provisions against anticipation of profits, is said to have occurred in the settlement of Miss Watson’s property,, under the sanction of Lord Tiiurlow, soon after his judgment in
 
 Pybus
 
 v.
 
 Smith,
 
 (reported 1 Ves. Jun. 189, and 3 Brown’s Ch. C. 340,) rendered in 1791. Many cases have since come under the consideration of the English Courts, in which the validity of such restraints in settlements for the use of married women, has been conclusively established. In this state, no case of the kind has been judicially considered — and how it would here be determined, it is unnecessary now to say. In the excepted case, where such restraints are allowed, there has been a diversity of opinion, and a conflict of decisions, as to the extent to which they may be carried. An eminent judge, the late Master of the Rolls, Sir John Leach, held, that in order to afford adequate and complete protection to these favoured interests, the power of anticipation may be controlled, even while the
 
 feme
 
 is single, so as to secure for her a separate estate, in the event of a future marriage; but upon appeal to the then Lord Chancellor Brougham, he reversed the decrees of the Master of the Rolls, and held, that a clause against anticipation annexed to a life-estate in a trust fund settled to the separate and exclusive use of a woman, .does not prevent her, at any time before-marriage, from making an effectual assignment.
 
 Wood-
 
 
 *486
 

 meston
 
 v.
 
 Walker,
 
 2 Russ. & Mylne, 197;
 
 Brown
 
 v.
 
 Pocock,
 
 Ibid. 210; and Cooper’s Sel. Ca. 70. But in these cases, and in many others, where the point has been considered, it is admitted, as indisputable, that such restraints imposed on persons having
 
 legal
 
 capacity to dispose of property, are wholly inept and null.
 
 Brandon
 
 v.
 
 Robinson,
 
 18 Ves. Jun. 429.
 
 Barton
 
 v.
 
 Briscoe,
 
 1 Jacobs, 603.
 
 Newton
 
 v.
 
 Reid,
 
 4 Sim. 141.
 
 Jackson
 
 v.
 
 Hobhouse,
 
 2 Meriv. 482. The Court is therefore of opinion, that the defendant, Hezekiah, could rightfully transfer his interest in the trust property; and declares that this interest, as to the slaves claimed by the complainant, John M. Dick, has been transferred to him, and that he is entitled to an account of the profits thereof, since the interest of the said Hezekiah in the same was transferred to him.
 

 But the said complainant, by his counsel, insists, that he is entitled to the immediate possession of the slaves, and either to a conveyance from the defendant, Allen, of the legal estate therein, or to an injunction, restraining the said defendant from asserting said title. This Court does not think so. If the instrument of the 22d of December, 1830, had not been executed, and the defendant Hezekiah still retained the interest in the slaves given him by his father’s deed, it is very clear, that he would not have been entitled to demand a surrender of the possession from the trustee. He could have claimed no more than what that deed secured to him, the annual profits of the slaves during' his life. If the sons had concurred with the father, in demanding a surrender of the possession, it ought not to have been decreed. Under the deed of Daniel Pitchford, the elder, valuable contingent interests have been limited to the children of the said Hezekiah’s sons, and the legal title was conveyed to the trustee in order to secure these contingent interests, as well as those of the father and his sons. The instrument of the 22d of December, 1830, neither enlarged
 
 these
 
 interests — nor destroyed the contingent interests — nor changed the duty of the trustee to any of his
 
 cestui que trusts.
 
 Unquestionably, that instrument was intended to operate as a relinquishment of the legal estate; but it cannot, in law, have this operation, unless it
 
 *487
 
 availed to
 
 pass the title;
 
 and this it did not pass, nor purport to pass, to any person whatever. If, indeed, it had transferred the title, there would have been no pretext for asking the aid of a court of equity. The very ground on which this bill seeks relief against the administrator of the trustee, is, that the legal title to the slaves is in him. The instrument not operating at law as a relinquishment, we do not see why equity should decree to it this operation. It is the duty of him who holds the legal estate to perform, and it is the duty of this Court to protect, all the trusts of the original gift, which are not incompatible with law; and to deliver over the possession to those who have an interest to defeat, and might be tempted to defeat, the contingent trusts, would in him, and in the Court, be a breach of duty. The arrangements made between the defendant, Hezekiah, and his sons, and between them and the complainant, John M. Dick, since the execution of the instrument of twenty-second December, 1830, do not, we think, furnish a sufficient reason for the interference asked for. It is not charged, that
 
 they,
 
 or any of them, have been circumvented or surprised into these arrangements, by the fraud or misrepresentations of the trustee — if such a charge can be considered as intimated in the bill, it is not proved — if distinctly alleged and proved, whatever other redress it might call for, it presents no equity for obtaining what the trustee’s administrator cannot rightfully yield, and what
 
 they
 
 are not in conscience entitled to demand. Each and every of them should be secured in the enjoyment of the rights, such as they are, which have passed under those arrangements; but a misapprehension as to the extent or value of these rights, furnishes no adequate reason for asking more.
 

 A decretal order will be drawn up for taking an account embodying the declarations of the Court, as to the rights of the parties litigant; and the further consideration of the cause will be reserved until the coming in of the report, or until the Court shall be called on for further directions.
 

 Per Curiam. Order accordingly.