224 S.E.2d 580 (1976)
289 N.C. 620
Elizabeth E. CROCKETT et al.
v.
FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF CHARLOTTE, North Carolina.
No. 36.
Supreme Court of North Carolina.
May 14, 1976.
*583 Mraz, Aycock, Casstevens & Davis by John A. Mraz and Robert P. Hanner, II, Charlotte, for plaintiffs-appellees.
Perry, Patrick, Farmer & Michaux by Roy H. Michaux, Jr., Charlotte, for defendant-appellant.
Brooks, Pierce, McLendon, Humphrey & Leonard by L. P. McLendon, Jr., and Michael D. Meeker, Greensboro, for the North Carolina Savings and Loan League, Inc. as amicus curiae.
COPELAND, Justice.
There is one principle question for us to determine: Does defendant, as beneficiary under a deed of trust containing the language above described have a lawful right to require the proposed purchasers of the property secured by said deed of trust to agree to pay an increased rate of interest as a condition to its assent to a transfer of the security property and the assumption of the loan?
Plaintiff contends that since the due-on-sale clause permits defendant to declare the entire debt due and payable when the owner of the property (mortgagor) sells it without the consent of the beneficiary in the deed of trust, it is a restraint on alienation and contrary to public policy and therefore void.
Our Court has consistently held that a condition annexed to the creation of an estate in fee simple disabling the conveyee from alienating it for any period of time is void as a restraint on alienation. Welch v. Murdock, 192 N.C. 709, 135 S.E. 611 (1926); Christmas v. Winston, 152 N.C. 48, 67 S.E. 58 (1910); Pritchard v. Bailey, 113 N.C. 521, 18 S.E. 668 (1893); Munroe v. Hall, 97 N.C. 206, 1 S.E. 651 (1887); Dick v. Pitchford, 21 N.C. 480 (1837). Similarly, we have held such restraints void where alienation is restricted to a limited class. Norwood v. Crowder, 177 N.C. 469, 99 S.E. 345 (1919); Brooks v. Griffin, 177 N.C. 7, 97 S.E. 730 (1919). Likewise, we have consistently held that a condition annexed to the creation of an estate in fee simple which for any period of time causes a forfeiture of the estate upon alienation is void as a restraint on alienation. Latimer v. Waddell, 119 N.C. 370, 26 S.E. 122 (1896); Twitty v. Camp, 62 N.C. 61 (1866); Pardue and wife v. Givens and others, 54 N.C. 306 (1854). Furthermore, we have treated restraining provisions in the form of covenants in the same manner as if they had been written as conditions. Lee v. Oates, 171 N.C. 717, 88 S.E. 889 (1916).
Also, we have held that the doctrine against restraints on alienation applies to equitable estates as well as legal estates. Lee v. Oates, supra; Dick v. Pitchford, supra. We have applied the restraints doctrine to conditions annexed to the creation of (legal and equitable) life estates. Lee v. Oates, supra; Wool v. Fleetwood, 136 N.C. 460, 48 S.E. 785 (1904); Dick v. Pitchford, supra. Additionally, we have held that a provision annexed to the creation of an estate in fee simple giving the conveyor a right for an indefinite time and at an unspecified price to repurchase the land when it is sold is void as a restraint on alienation. Hardy v. Galloway, 111 N.C. 519, 15 S.E. 890 (1892).
We have also held that restraints against partition or division are void. Mangum v. Wilson, 235 N.C. 353, 70 S.E.2d 19 (1952); Johnson v. Gaines, 230 N.C. 653, 55 S.E.2d 191 (1949).
*584 In Lee v. Oates, supra, we noted that an estate created with a condition annexed which prevented a married woman from anticipating her separate equitable estate was a recognized exception to the restraints doctrine. So long as the married woman had not become discovert by death or absolute divorce, the policies in favor of protecting the married woman's separate equitable estate from the control of her husband outweighed the policies against restraints on alienation.
We have also held that a condition against alienation annexed to the creation of a charitable trust is an exception to the restraints doctrine. Trust Co. v. Construction Co., 275 N.C. 399, 168 S.E.2d 358 (1969). Of course, this restraint may be modified by the courts under their equitable powers in order to preserve the trust estate or protect the cestuis que trustent upon the happening of some exigency, contingency, or emergency not anticipated by the trustor.
The due-on-sale clause involved in the present case does not cause the kind of substantial or direct restraint on alienation involved in the previous cases considered by this Court and held to be invalid. Plaintiff-trustor-borrower is not disabled from alienating his realty to any class for any period of time. Likewise, his realty is not subject to forfeiture for any period of time upon an attempted alienation. There is also no restraint preventing partition or division of the realty for any period of time. Furthermore, no one has a right for an indefinite time and at an unspecified price to repurchase the land when it is sold. Instead, plaintiff-trustor-borrower has an absolute right to alienate his realty as he chooses at any time to any willing buyer without the realty being forfeited on account of the transaction or being subject to an unrestricted right to repurchase.
Merely by paying off the loan, plaintiff-trustor-borrower or the prospective conveyee can comply with the due-on-sale clause and insure that upon alienation the buyer will not lose his property by exercise of the right to foreclose. It is significant that requiring the loan to be paid off does not involve an extraction of a penalty. Unless the debtor pursues another course of action, the creditor is merely returned the still outstanding amount of the loan that was made to facilitate plaintiff's original purchase. Thus, there is no real freezing of assets or discouragement of property improvement on account of the due-on-sale clause since the property can be freed by simply paying off the loan. Moreover, the due-on-sale clause is part of an overall contract that facilitates the original purchase and, thus, promotes alienation of property. Additionally, North Carolina has approved employment of an acceleration clause in a mortgage, a note secured by a mortgage, and an unsecured note. Walter v. Kilpatrick, 191 N.C. 458, 132 S.E. 148 (1926); Bizzell v. Roberts, 156 N.C. 272, 72 S.E. 378 (1911); Trust Company v. Duffy, 153 N.C. 62, 68 S.E. 915 (1910).
One factor that significantly affects the nature of this acceleration clause so far as the restraints doctrine is concerned is the fact that the creditor's right to accelerate arises only when the realty is alienated. Thus, the practical effect of the due-on-sale clause when it is considered in isolation is that the owner is encouraged not to alienate his property if it would be more advantageous to enjoy a loan which has become favorable because of changed interest rates in the market. This is what may be termed a hindrance or an indirect restraint on alienation. As defined in L. Simes & A. Smith, The Law of Future Interests § 1112 (2d Ed. 1956), "An indirect restraint on alienation arises when an attempt is made to accomplish some purpose other than the restraint of alienability, but with the incidental result that the instrument, if valid, would restrain practical alienability." Indirect restraints historically have been restricted by the rule against perpetuities and related rules and have not been as harshly struck down as the classical direct restraints. L. Simes & A. Smith, supra at § 1116. The classical direct restraints include the previously discussed provisions in a deed, will, contract or other instrument which, by their express terms, *585 or by implication of fact, purport (1) to prohibit alienation of the estate which was granted by that instrument or (2) cause a forfeiture of the estate which was granted by that instrument upon an attempted alienation. Also, a covenant in an instrument of conveyance or contract in which the promisor agrees not to alienate the property that he has been granted therein involves a direct restraint. See generally L. Smies & A. Smith, supra at § 1131.
Continuing our consideration of this particular due-on-sale clause and loan contract, we find noteworthy that under the loan agreement entered into in this case, plaintiff could prepay at anytime without penalty. Thus, defendant-beneficiary-lender would lose any profit or advantage he otherwise would have if he retained the loan, interest rates declined, and plaintiff prepaid. Although plaintiff-trustor-borrower might have to pay a re-financing charge, he would be able to prepay whenever he chose and take advantage of lower interest rates in the market. Plaintiff would not have to wait for an alienation of the property before being permitted to take advantage of changed interest rates. Thus, as between plaintiff-trustor-borrower and defendant-beneficiary-lender, plaintiff is in a more favorable position for taking advantage of fluctuations in interest rates assuming the due-on-sale clause is permissible, If the due-on-sale clause is not permissible, the plaintiff would have an even superior position. Additionally, we note that a lender could have charged a prepayment penalty of 1% for prepayment of a loan within the first year of the loan under G.S. 24-10, but otherwise no prepayment penalty would have been permissible. Thus, in order to balance the ability of lender and borrower to take advantage of fluctuations in interest rates, equities favor the limited adjustment permissible by the due-on-sale clause.
Although the freedom to contract is limited by the restraints doctrine and the policy reasons therefore, the equities in this case indicate that the policy factors behind the restraints doctrine are not really affected under the circumstances of this case. In fact, a fair contractual agreement would appear to support a loan with no prepayment penalty and a due-on-sale clause. The immediate buyer has the security of having the ability to pay off his loan at no greater than the initial interest rate, and he can get a more favorable loan if interest rates decline. The lender can get a more favorable loan agreement if interest rates rise and there is a new owner of the realty.
In essence, it is the lender who has provided the opportunity for the initial purchaser to buy the realty. It seems fair for the lender to be able to contract to receive an increased interest rate, on the very loan that is facilitating transfer of the property, in the event the original purchaser decides he is not going to continue ownership or pay off the loan so as to have full equity in the realty. A prime purpose of the loan was to enable the buyer to purchase the realty. If the buyer sells before he obtains full equity, this purpose ceases. Under our free enterprise system the lender may lend his money under such terms as maximize his profits within the limits set by law. As the court stated in Cherry v. Home Sav. & Loan Assn., 276 Cal.App.2d 574, 81 Cal. Rptr. 135 (1969), the due-on-sale clause is employed by sensible lenders to minimize their risks and avoid losing the benefit of future increases in the interest rate.
In the absence of a due-on-sale clause, plaintiff-trustor-borrower would receive a premium for a favorable loan assumption when he sold his realty. This premium would be the result of the long term loan contract and a fortuitous rise in interest rates. By operation of the due-on-sale clause plaintiff is not able to realize this premium. Upon sale of the realty plaintiff receives the fair market value of the realty without further benefiting from the loan he received.
"The policy against restraints on alienation is said to be based upon the belief that restraints remove property from commerce, concentrate wealth, prejudice creditors, and discourage property improvements." A. Casner & W. Leach, Cases and Text on Property 1008 (1969 Ed.); accord, Volkmer, *586 The Application of the Restraints on Alienation Doctrine to Real Property Security Interests, 58 Iowa L.Rev. 747, 750 (1973) [hereinafter cited as Volkmer]; see also L. Simes & A. Smith, supra at §§ 1133-35; Schnebly, Restraints upon the Alienation of Legal Interests, 44 Yale L.Rev. 961 (1934-35) [hereinafter cited as Schnebly]; Comment, The Development of Restraints on Alienation since Gray, 48 Harvard L.Rev. 373, 401-406 (1934-35). We cannot see how any of these policy factors or other equitable factors can be unfavorably affected by the use of the due-on-sale clause under the circumstances of this case. Also, we do not feel that approval of this kind of due-on-sale clause in connection with a loan for which there is no penalty for prepayment will bring about any confusion or uncertainty in the land law.
Restatement of Property § 410, Comment a at 2429 (1944) reasons that restraints on alienation may be justified "if the objectives behind the imposition of the restraint are sufficiently important to outweigh the social evils which flow from the enforcement of the restraint or if the interference with the power of alienation is so insignificant that no appreciable harm results from the enforcement of the restraint." The due-on-sale clause in this case is justified under these criteria.
Furthermore, under the circumstances of this case, the practical effect upon alienation is so insignificant or speculative that no appreciable harm has been shown to result from enforcement of the due-on-sale clause. Numerous buyer and seller preferences determine the practical alienability of property as well as the actual effect a due-on-sale clause has on the practical alienability of property. Additionally, the practical effect on restraining alienation is no greater in this case than that in many areas where a practical restraint has traditionally been permitted. Moreover, the policy reasons for upholding the due-on-sale clause employed under the circumstances of this case are equally sound. Examples of these other areas include (1) trusts and powers of revocation and appointment, (2) the spend-thrift trust permitted by G.S. 41-9 (limited to a trust for relatives of the grantor of property yielding an annual income at the time of the transfer of no greater than $500 and lasting no longer than the life of the relative). Fowler v. Webster, 173 N.C. 442, 92 S.E. 157 (1917), (3) future interests (because they require the joint action of two or more persons to effect a complete alienation), (4) restrictions and restraints imposed on leaseholds and life estates and (5) other factors affecting free marketability of property. See Coast Bank v. Minderhout, 61 Cal.2d 311, 38 Cal.Rptr. 505, 392 P.2d 265 (1964); L. Simes & A. Smith, supra at §§ 1115, 1168; Schnebly.
Because of the economic and legal problems involved, a number of law review articles have elaborated on this problem. Bonanno, Due on Sale and Prepayment Clauses in Real Estate Financing in California in Times of Fluctuating Interest RatesLegal Issues and Alternatives, 6 U. of San.Fran.L. Rev. 267 (1971-72); Volkmer; Warren, Is the Practice of Raising the Interest Rate in Return for Not Exercising an Acceleration Clause on Assumption of a Mortgage Illegal in Texas as a Restraint on Alienation? 13 S.Tex.L.J. 296 (1971-72); Comment, MortgagesA Catalogue and Critique on the Role of Equity in the Enforcement of Modern-Day "Due-on-Sale" Clauses, 26 Ark.L. Rev. 485 (1972-73); Comment, Mortgages: Restrictions on Transfer of the FeeEffect of Due-on-Sale Clauses, 28 Okla.L.Rev. 418 (1975); Comment, Acceleration Clauses as a Protection for Mortgagees in a Tight Money Market, 20 S.D.L.Rev. 329 (1975); Comment, Judicial Treatment of the Due-on-Sale Clause: The Case for Adopting Standards of Reasonableness and Unconscionability, 27 Stan.L.Rev. 1109 (1974-75); Comment, Debt Acceleration on Transfer of Mortgaged Property, 29 U. of Miami L.Rev. 584 (1975); Note, The Case for Relief from Due-on-Sale Provisions: A Note to Hellbaum v. Lytton Savings and Loan Association, 22 Hastings L.J. 431 (1970-71).
Under the facts of this case, the due-on-sale clause was validly exercised even though the security property was not *587 impaired and the transfer of the security property did not affect repayment of the original loan. Courts in other jurisdictions have recognized that a valid reason for exercise of a due-on-sale clause is to obtain higher interest rates or accelerate repayment of the loan (in effect determining that the clause is reasonable per se unless there is a showing of fraud, duress or inequitable or unconscionable conduct on the part of the lender). Coast Bank v. Minderhout, supra; Cherry v. Home Sav. & Loan Assn., supra; Malouff v. Midland Federal, 181 Colo. 294, 509 P.2d 1240 (1973); People's Savings Assn. v. Standard Industries, 22 Ohio App.2d 35, 257 N.E.2d 406 (1970); Gunther v. White, 489 S.W.2d 529 (Tenn. 1973); Mutual Federal S. & L. v. American Med. Services, 66 Wis.2d 210, 223 N.W.2d 921 (1974); Mutual Fed. S. & L. Asso. v. Wisconsin Wire Wks., 58 Wis.2d 99, 205 N.W.2d 762 (1973). There is a split of authority on this point, and other cases have indicated that the due-on-sale clause can be validly exercised only if the security of the lender is threatened. Tucker v. Pulaski Fed. S. & L., 252 Ark. 849, 481 S.W.2d 725 (1972); Tucker v. Lassen Sav. & Loan Assn., 12 Cal.3d 629, 116 Cal.Rptr. 633, 526 P.2d 1169 (1974); La Sala v. American Sav. & Loan Assn., 5 Cal.3d 864, 97 Cal.Rptr. 849, 489 P.2d 1113 (1971) (due-on-encumbrance clause); Clark v. Lachenmeier, 237 So.2d 583 (Fla.App.1970); Baker v. Loves Park Savings & Loan Association, 61 Ill.2d 119, 333 N.E.2d 1 (1975) (restraint held to be reasonable).
These classifications inherently are subject to interpretation since they entail generalizations concerning cases involving specific fact situations. Baltimore Life Insurance Company v. Harn, 15 Ariz.App. 78, 486 P.2d 190 (1971), cert. denied, 108 Ariz. 192, 494 P.2d 1322 (1972), is an example of a case dealing with high prepayment penalties as well as the fact that the clause was not exercised for security purposes. The court concluded that an award of some $20,000 in penalties and attorneys fees by operation of an acceleration clause would be unconscionably harsh considering the fact that the action to accelerate and foreclose was an equitable proceeding. The facts of this case render classification impractical, as is also true with respect to Lane v. Bisceglia, 15 Ariz.App. 269, 488 P.2d 474 (1971), a subsequent Arizona case citing Baltimore Life Insurance Company.
In conclusion, we believe that insofar as the second line of cases prohibits exercise of due-on-sale clauses except for security purposes, it is too restrictive in its approach and, under the circumstances of this case where there were no prepayment penalties, it was appropriate to exercise the due-on-sale clause even though the security of the lender was not threatened.
As was wisely said by Justice Higgins speaking for our Court in Roberson v. Williams, 240 N.C. 696, 700, 701, 83 S.E.2d 811, 814 (1954), "Ordinarily, when parties are on equal footing, competent to contract, enter into an agreement on a lawful subject, and do so fairly and honorably, the law does not permit inquiry as to whether the contract was good or bad, whether it was wise or foolish." "It is the simple law of contracts that `as a man consents to bind himself, so shall he be bound [cases cited].'" Troitino v. Goodman, 225 N.C. 406, 414, 35 S.E.2d 277, 283 (1945).
We, therefore, hold that in the absence of allegations and proof that the lender acted fraudulently, inequitably, oppressively or unconscionably in its demand for increased interest rates in return for the lender's consent to the sale, then the exercise of the due-on-sale clause is reasonable and not invalid as a restraint on alienation.
Plaintiff additionally contends that the language of the deed of trust does not permit defendant to accelerate the debt for the sole purpose of collecting a higher interest rate upon a transfer of the security property. This contention is without merit. The language of the contract is unambiguous:
"[I]f the property herein conveyed is transferred without the written assent of Association, then . . . the full principal sum with all unpaid interest thereon shall at the option of Association, its successors *588 or assigns, become at once due and payable without further notice and irrespective of the date of maturity expressed in said note."
This language does not purport to restrict Association from withholding assent and accelerating except for security purposes. Where the terms of the contract are not ambiguous, the express language of the contract controls in determining its meaning and not what either party thought the agreement to be. Howell v. Smith, 258 N.C. 150, 128 S.E.2d 144 (1962); Casualty Co. v. Teer Co., 250 N.C. 547, 109 S.E.2d 171 (1959).
Plaintiff's final contention is that G.S. 25-1-208 precludes defendant from accelerating the debt. Assuming arguendo that this statute applies to contracts involving land, we note that it imposes a "good faith" standard on the creditor where it is agreed that he may accelerate the debt at his option. Where the acceleration clause purports to give the creditor the right to accelerate "at will" or "when he deems himself insecure" or in words of similar import, the creditor may accelerate only if he has a "good faith" belief that the prospect of payment or performance is impaired. "Good faith" is defined in G.S. 25-1-201(19) as "honesty in fact in the conduct or transaction concerned." G.S. 25-1-208 imposes this "good faith" standard only on insecurity-type clauses. These clauses are clearly distinguished from default-type clauses (such as the due-on-sale clause involved in our case) where the right to accelerate is conditioned upon the occurrence of a condition which is within the control of the debtor. See Volkmer. For this reason G.S. 25-1-208 is inapplicable to our case and provides no relief for plaintiff.
The amicus curiae brief, in addition to presenting an argument under state law similar to that of defendant, asserts that federal law preempts the field insofar as "due-on-sale" clauses in loan instruments of federal savings and loan associations are concerned. The amicus curiae then argues that under federal law the due-on-sale clause involved in this case is valid. At no time have the parties in this action addressed themselves to the question of the applicability of federal law or incorporated by reference the amicus curiae brief. Under Rule 28, N.C. Rules of Appellate Procedure, 287 N.C. 669, 741 (Appendix 1975), appellate review is limited to the arguments upon which the parties rely in their briefs. Moreover, the amicus curiae argues only one side of the federal question and does not fully present the evidence necessary for a determination on this issue. Under these circumstances the question of the applicability of federal law is not properly presented for consideration.
We conclude that the trial judge should have rendered summary judgment for defendant and his decision must be
REVERSED.
LAKE, Justice (dissenting).
On 13 February 1968, Domar Corporation made its note in the amount of $80,000 payable in monthly installments, with interest at 7 per cent, to First Federal Savings & Loan Association. The note was secured by a deed of trust on real estate on which several apartment houses, each containing numerous rental apartments, are located. The interest rate could not be changed so long as Domar owned the property and was not in default. The note provides for acceleration of its maturity at the option of the holder in event of failure of the maker to remain a member of the Association, default in the payment of any installment, or default "in the performance or observance of any of the covenants or agreements of any instrument now or hereafter evidencing or securing this note."
The deed of trust contains covenants by the mortgagor that it will pay all taxes, keep the property insured, keep the premises in good order and not permit any waste thereof and will comply with the provisions of the note and the bylaws of the lending Association. The deed of trust provides for acceleration of the maturity of the note upon default in any of these respects and further provides that "if the property herein conveyed is transferred without the written *589 assent of Association," the maturity date of the note may be accelerated, at the option of the Association, and the deed of trust foreclosed.
It will be observed that the deed of trust does not contain a "covenant or agreement" by the maker of the note that it will not, without the assent of the Association, transfer the land. It merely provides that if such transfer occurs the Association may accelerate the maturity of the note. Consequently, a transfer of the land without the assent of the Association is not a default by the maker of the note "in the performance or observance of any of the covenants or agreements of any instrument * * * evidencing or securing" the note. Thus, the accelerating event stated in the note, itself, is not activated by such transfer of the land.
It will be further observed that the provision for acceleration of the maturity date of the note, upon transfer of the property without the assent of the Association, does not expressly extend to transfers by owners subsequent to the mortgagor. This provision is in a section of the deed of trust appearing under a caption reading: "WITH RESPECT TO REPAYMENT OF THE INDEBTEDNESS HEREBY SECURED AND PERFORMANCE OF MORTGAGOR'S OTHER AGREEMENTS; WITH RESPECT TO FORECLOSURE." Apparently, the mortgagor was a corporation engaged in the development of real estate and the construction for resale of apartment houses and, possibly other residences, thereon. Since such mortgagor could reasonably be expected to transfer promptly such property to a grantee, intending to make it, in whole or in part, the home of the grantee's family, the lending association could well be concerned with the identity of the first such transferee but have a less substantial interest in subsequent transferees who would, normally, take the property after the debt had been substantially reduced.
In the present instance, the accelerating event, as now construed by the money lender, is a "sleeper" provision, tucked away in the printed portion of the deed of trust so that its meaning, as now asserted by the money lender, would not readily catch the attention of a mortgagor, or a subsequent purchaser of the property, reading the deed of trust. A moderately alert and wary reader could easily assume the provision contemplated that the mortgagee's assent to a subsequent conveyance would not be unreasonably withheld and that the provision was intended only to protect the mortgagee's security. In my opinion, it would not readily occur to such a reader, usually a person inexperienced in real property development and financing, purchasing a home for his family, that this seemingly innocuous clause meant the money lender could refuse to consent to a sale of the property to a purchaser of unimpeachable credit and character and foreclose unless the money lender was paid a toll on the transaction.
If such be the meaning of the clause, as the majority opinion seems to hold, the demandable toll could be $1,000, or any other fixed lump sum, just as easily as it could be an increase in the interest rate. I recognize that the language used in the present deed of trust is without qualification and so is entirely susceptible of the construction the money lender and the majority opinion now put upon it. To prevent this clause from being a loan shark's trap for the unwary borrower, it should state explicitly that it is intended to permit the money lender to increase the interest rate or to require any other penalty to be paid to the lender.
In the particular case before us on this appeal, the original mortgagor appears to have been a real estate developer and builder of houses for resale and the specific property was commercial in nature (apartment houses). Thus, this mortgagor and the Crocketts were engaged in dealing in and financing property commercial in nature. The more customary borrower from a savings and loan association is a prospective home owner, less sophisticated in the intricate patterns of real estate financing, contemplating a resale of the property as a remote possibility of secondary importance, or is a home owner compelled by some financial difficulty to borrow and limited in *590 ability to shop about for the most favorable terms. The majority opinion makes no distinction between these types of borrowers and the rule it now establishes for the first time in this State is, apparently, intended to apply to all loans secured by mortgages or deeds of trust.
Provisions for acceleration of the maturity of a long term note, and for a resulting foreclosure of the deed of trust securing it, are fraught with danger of oppression of the debtor by the money lender. These instruments are, almost invariably, upon printed forms prepared by counsel for the money lender. Such provisions should be strictly construed. If there were no other reason for doing so, it is my view that the equitable relief against acceleration of the maturity of this note and foreclosure of the deed of trust should have been granted on the ground that the acceleration clause, properly construed, does not permit acceleration and foreclosure upon the facts here stipulated. There are, however, in my opinion, other sufficient reasons for affirming the judgment of the Superior Court.
The stipulated facts upon which the case was heard and determined in the Superior Court show (paraphrased and renumbered):
(1) On 10 October 1968, eight months after the note and deed of trust were executed, Domar Corporation conveyed the property to Mrs. Crockett and her husband, its deed to them providing that the grantees "specifically assume and agree to pay the present unpaid balance of said indebtedness as part of the purchase price for this conveyance."
(2) The defendant Association was not notified of and did not consent to this transfer prior thereto, but, on the day when the transfer to the Crocketts occurred, it was notified thereof by Domar Corporation. Five days later, the Crocketts, in response to the defendant's requirement that she do so, executed an "Assumption Agreement" which stated that the defendant consented to the conveyance of the premises to the Crocketts, and the Crocketts "hereby assume and agree to pay said mortgage indebtedness, evidenced by said note and mortgage and to perform all of the obligations provided therein." (Again, it will be observed that neither in the deed of trust, nor in the note secured thereby, was there any covenant by the original mortgagor that it would not convey the land without the assent of the defendant Association. Thus, there was no "obligation" assumed by the Crocketts with reference to any retransfer of the property by them. It is not lightly to be assumed by us that this was an inadvertence of the draftsman of the deed of trust for it is, at least, equally reasonable to assume that the draftsman was carefully seeking to avoid an express covenant restraining the alienation of the property for fear that such covenant might be declared against public policy by this Court.)
(3) For nearly five years the Crocketts made regular payments upon the note to the defendant. Mr. Crockett then died. For two more years Mrs. Crockett continued to make all such payments to the defendant, there being no suggestion in the record that the defendant was requested to or did assent to the transfer of the property, by operation of law, to Mrs. Crockett as the surviving tenant by the entireties.
(4) On 24 April 1975, two years after the death of her husband, Mrs. Crockett contracted to convey the property to her co-plaintiffs, Mr. and Mrs. Proctor, the contract providing that it was contingent upon the ability of the purchasers "to assume First Federal 7% loan" and to obtain the written approval from the defendant Association of such assumption "at 7% interest."
(5) Mr. and Mrs. Proctor are presently members of the defendant Association and have a loan from it which loan is "current."
(6) The defendant Association refused to approve the transfer of the property and assumption of the loan by Mr. and Mrs. Proctor unless they would agree to pay "an increased rate of interest on said indebtedness."
(7) This refusal of the defendant to consent to the requested transfer and assumption "is not based on fear that the security property may become impaired" or upon a desire of the defendant to maintain "direct *591 responsibility of the current debtor (Mrs. Crockett)." (Of course, such transfer of the property and assumption of the indebtedness by Mr. and Mrs. Proctor would not release Mrs. Crockett from her liability to the defendant upon her own assumption of the indebtedness represented by the note of Domar Corporation.)
(8) As a result of the refusal of the defendant to consent to the conveyance to Mr. and Mrs. Proctor, without an agreement by them to pay a higher rate of interest upon the balance due on the note, Mr. and Mrs. Proctor refused to consummate the proposed transaction with the plaintiff, Mrs. Crockett.
(9) Mrs. Crockett "is willing to consummate the said transaction without being released from further liability to the defendant."
(10) Mrs. Crockett's contract with the Proctors provided for a sale of the property for $88,415.95, which was $24,500 in excess of the amount remaining unpaid on the note to the defendant. (Thus, that note had been reduced from $80,000 to approximately $55,000. Nothing in the record suggests that the mortgaged property has deteriorated in value so as to impair the defendant's security.)
In this action the plaintiffs seek: (1) A declaratory judgment that the defendant's refusal to consent to the transfer of the property is "arbitrary, unreasonable and capricious" and is in violation of GS 25-1-208; (2) a declaratory judgment that the provision in the deed of trust for acceleration of the maturity date of the note upon a transfer of the property without the consent of the defendant is unenforceable; (3) a preliminary injunction and a permanent injunction restraining the defendant from accelerating the maturity of the note in the event of a transfer of the property by the plaintiff Crockett; and (4) damages.
The Superior Court denied the defendant's motion for summary judgment, granted a like motion by the plaintiffs and adjudged that "the defendant has no lawful right to call its loan due upon a transfer of the property securing said loan from the plaintiff Crockett to the plaintiffs Proctor." The court reserved for trial the claim of Mrs. Crockett for damages.
The question for decision on this appeal (apart from the question of construction above discussed) is: Under the law of this State, may the holder of a note, secured by a deed of trust on real estate, accelerate the maturity of the note and foreclose the deed of trust upon a conveyance of the property by the owner of the equity of redemption without consent of the holder of the note, the deed of trust providing for such acceleration at the option of the holder and the only reason for the holder's refusal to consent to the conveyance being the transferee's refusal to agree to pay a higher rate of interest than that stated in the note?
This is a matter of first impression in this Court. There is substantial diversity among the decisions of the courts of other states which have considered the question.
Such acceleration provisions are commonly referred to as "Due-on-Sale Clauses." One group of decisions takes the view that a "Due-on-Sale Clause" is not invalid per se, but its exercise will not be permitted unless the proposed transfer threatens the security interest of the holder of the note. Cases illustrating this view are: Tucker v. Pulaski Federal Savings & Loan Assoc., 252 Ark. 849, 481 S.W.2d 725 (1972); Baltimore Life Ins. Co. v. Harn, 15 Ariz.App. 78, 486 P.2d 190 (1971); La Sala v. American Savings & Loan Assoc., 5 Cal.3d 864, 489 P.2d 1113 (1971); Tucker v. Lassen Savings & Loan Assoc., 12 Cal.3d 629, 526 P.2d 1169 (1974); Clark v. Lachenmeier (Fla.App.), 237 So.2d 583 (1970); Baker v. Loves Park Savings & Loan Assoc., 61 Ill.2d 119, 333 N.E.2d 1 (1975). A second view is that a "Due-on-Sale Clause" is valid when reasonable, a demand for higher interest not being sufficient, per se, to make the action of the lender unreasonable. This view is illustrated by Cherry v. Home Savings & Loan Assoc., 276 Cal.App.2d 574, 81 Cal.Rptr. 135 (1969); Malouff v. Midland Federal Savings & Loan Assoc., 181 Colo. 294, 509 P.2d 1240 (1973); Gunther v. White, 489 S.W.2d 529 (Tenn.1973); Mutual Federal Savings & *592 Loan Assoc. v. American Medical Services, Inc., 66 Wis.2d 210, 223 N.W.2d 921 (1974). A third view is that a "Due-on-Sale Clause" is valid and enforceable regardless of the lender's reason for exercising his option to accelerate. Though the decisions in this group are not entirely clear, it is illustrated by Coast Bank v. Minderhout, 61 Cal.2d 311, 38 Cal.Rptr. 505, 392 P.2d 265 (1964), and Stith v. Hudson City Savings Institution, 63 Misc.2d 863, 313 N.Y.S.2d 804 (1970). Thus, the decisions by the courts of other states do not provide for us a clear guide. The majority opinion appears to adopt the third of these views.
It has long been settled that a clause in a note permitting the holder to accelerate its maturity and, thereupon, to foreclose a deed of trust securing the note, is not invalid, per se, and does not impair negotiability. Thus, in Walter v. Kilpatrick, 191 N.C. 458, 132 S.E. 148 (1926), a clause providing for acceleration of an entire series of notes upon failure of the maker to pay, when due, any note in the series, or interest thereon, was held valid and enforceable and not to impair the negotiability of the note. In Bizzell v. Roberts, 156 N.C. 272, 72 S.E. 378 (1911), in sustaining a similar provision for acceleration upon default by the maker in payments of an installment of his indebtedness, this Court, speaking through Justice Hoke, said:
"Authority here and elsewhere is to the effect that where a debt is payable in installments, and same is secured by a mortgage containing provision that the entire debt shall mature on failure to pay the interest or specified portions of the principal as it comes due, or any other reasonable stipulation looking to the care and preservation of the property or the maintenance of the lien thereon, such stipulation, in the absence of circumstances tending to show fraud or oppression or `unconscionable' advantage, is enforceable as a valid contract obligation." (Emphasis added.)
GS 25-1-208, a part of the Uniform Commercial Code adopted in this State in 1965, provides:

"Option to accelerate at will.A term providing that one party or his successor in interest may accelerate payment or performance or require collateral or additional collateral `at will' or `when he deems himself insecure' or in words of similar import shall be construed to mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised."
This provision of the Uniform Commercial Code does not extend to an accelerating clause in which the accelerating event is some act or default by the debtor, such as conveyance of the mortgaged land, or default in a payment. However, it is indicative of a legislative concern for the protection of debtors from oppressive and unreasonable acceleration of the due date of their obligations calculated to extort from the debtor more collateral or some other benefit to the creditor.
GS 25-2-302, a portion of the Uniform Commercial Code, originally omitted when the Code was enacted in this State but added by the Session Laws of 1971, Chapter 1055, provides:

"Unconscionable contract or clause.(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.
"(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the party shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."
This provision of the Uniform Commercial Code, by the express provision of the Act *593 inserting it into the Code, does not apply to transactions entered into prior to 1 October 1971. Thus, it does not apply to this case. However, this statute also is indicative of a legislative policy to guard debtors against "unconscionable" provisions in their contracts.
The courts have authority, in proper cases, to declare provisions in a contract unenforceable because they are contrary to the public policy. Lamm v. Crumpler, 233 N.C. 717, 65 S.E.2d 336 (1951); Burbage v. Windley, 108 N.C. 357, 12 S.E. 839 (1891); Covington v. Threadgill, 88 N.C. 186, 189 (1883). Thus, in Tinsley v. Hoskins, 111 N.C. 340, 16 S.E. 325 (1892), this Court held unenforceable a provision in a note that, in event the note was not paid when due and had to be collected by legal process, the maker would pay an attorney's fee in addition to the principal and interest due on the note. The Court said that such contract was oppressive and contrary to public policy. This was followed in Bank v. Lumber Co., 128 N.C. 193, 38 S.E. 313 (1901), and other cases. Thus, the power of courts to declare provisions in notes unenforceable because oppressive and contrary to public policy is clear. Especially is this true when the court is called upon to exercise its equity powers.
GS 24-10(d) provides:
"(d) Any lender may charge any person * * * that assumes a loan made under the provisions of G.S. 24-1.1, where the principal amount assumed is not more than fifty thousand dollars ($50,000) and is secured by real property, a fee not to exceed one percent (1%) of the principal amount due or twenty-five dollars ($25.00), whichever is less."
This statute does not apply to the present case because the unpaid balance upon the loan exceeds $50,000, and also because the statute was not enacted until 1971, after the present note and deed of trust were executed. However, it is strongly indicative of a legislative intent to protect mortgagors against demands of the money lender for more than nominal fees upon sale of the mortgaged property to a purchaser who assumes the mortgage debt.
It is true that the quality of the mortgagee's security may be impaired by a conveyance of the mortgaged property to an irresponsible person who will permit the property to fall into disrepair or otherwise cause it to deteriorate in value. It does not follow, however, that a "Due-on-Sale Clause" is reasonably necessary for the protection of the mortgagee. Virtually all carefully prepared mortgages and deeds of trust today contain provisions requiring the mortgagor to keep the property in repair and to avoid waste. A clause permitting acceleration of the maturity of the note and foreclosure of the deed of trust for violation of such a covenant is customary and clearly valid. There is such a clause in the deed of trust involved in this litigation. A general acceleration clause set into operation by a conveyance of the property to anyone not approved by the mortgagee is closely akin to a provision for acceleration when the holder of the note "deems himself insecure." Because such a clause subjects the debtor to the grave risk of oppression by an arbitrary holder, GS 25-1-208 provides that acceleration of maturity under such a clause is permitted only if the holder "in good faith believes that the prospect of payment or performance is impaired." It is my view that the same result should be reached by the courts when the holder seeks to accelerate the maturity of the note because of a conveyance of the mortgaged property which cannot, in good faith, be claimed to impair the holder's security for the payment of the debt. Where, as here, the note and deed of trust provide for acceleration in event the mortgagor fails to keep the property in repair, a "Due-on-Sale Clause" cannot be justified on the theory that it is a reasonable safeguard against waste of the security.
In the present case, it is clear that the proposed conveyance from Mrs. Crockett to Mr. and Mrs. Proctor presents no threat to the security interest of the defendant in the property or to the defendant's right otherwise to enforce payment of the note. The conveyance of the property to Mr. and Mrs. *594 Proctor, whether or not they assume the payment of the indebtedness, does not release Mrs. Crockett from her liability arising from her own assumption of the mortgage debt. Obviously, there is no reasonable basis for the defendant to suppose that such conveyance will endanger its security interest in the property. It is stipulated that the Proctors, themselves, own other property upon which this defendant holds a deed of trust and their indebtedness thereon is not in default. Indeed, it is stipulated that the defendant's withholding of its approval of the proposed transfer from Mrs. Crockett to the Proctors has no relation to any fear of impairment of the security by reason of such transfer.
The sole reason for the defendant's refusal to approve the transfer and for its threat to accelerate the maturity of the note and to foreclose the deed of trust is that the defendant thereby seeks to coerce an increase in the interest hereafter to be paid on the unpaid portion of the principal of the note. It is my view that this is sheer extortion and the Superior Court was correct in refusing to permit the defendant to use the acceleration clause for this purpose. In my view the money lender's withholding of the approval of the transfer under these circumstances is unconscionable. The defendant, like Shylock in the Merchant of Venice, says, "So says the bond, doth it not, Noble Judge? * * * Those are the very words." Merchant of Venice, Act IV, Scene 1. The majority opinion agrees that it is "so nominated in the bond" and, therefore, reverses the judgment of the Superior Court.
In reaching this conclusion, the majority opinion says the provision in the contract is clear, the parties to the contract were on equal footing when they entered into the agreement, "As a man consents to bind himself, so shall he be bound," and the debtor can avoid acceleration and foreclosure by simply paying off the debt or refraining from conveying his property.
As I read the majority opinion, it holds that use of a "Due-on-Sale Clause" for the sole purpose of requiring an increase in the rate of interest is reasonable and not oppressive and, therefore, entitled to the protection of the court. In the present case, the mortgaged property is not a single family residence but is a block of apartment houses. The mortgagor and Mrs. Crockett are thus investors in business property. They may, therefore, be on approximately "equal footing" with the defendant. The majority opinion, however, does not rest upon this circumstance. It extends, apparently to mortgages of typical family residences. When so extended, even if not when applied to the present case, the entire basis for the majority opinion seems to me utterly unrealistic.
Consider the case of the typical young couple buying a home. Their purpose is not investment for profit but acquisition of a residence. They borrow substantially all of the purchase price because they cannot pay cash for the property. Substantially all of their own funds become tied up in the property. After a time the husband's employer transfers him to another city, or a better employment opportunity in another city presents itself. When it moves the family must acquire a new residence. As before, they do not have the ability to do so unless they can get their money out of their present residence by a sale of it. It is a matter of common experience that most of their prospective buyers are in a comparable financial condition so that they cannot purchase the house, for its fair value, unless they can assume the existing mortgage or refinance it. If the prospective purchaser has to refinance the house, the cost of such financing must, as a practical matter, come, in whole or in part, out of the price he is otherwise willing to pay the seller. To permit the mortgagee to charge the prospective purchaser a higher rate of interest, or a substantial fixed sum, for the privilege of carrying on the existing mortgage is, in effect, a penalty upon the seller for it must inevitably reduce what he will receive from the sale of his house.
In such a situation it is completely unrealistic to say that the homeowner and the money lender were on equal footing in *595 making the original contract and equally unrealistic to say that the homeowner can avoid the loss resulting from the threat to accelerate the due date of his note by paying off the mortgage or by refraining from selling his home. He has to sell and he cannot pay off the mortgage. This use of the acceleration clause to coerce an increase in the rate of interest is oppressive, extortionate and unconscionable.
Consider, again, the homeowner who loses his job, suffers disabling illness or some like financial disaster. He borrows and mortgages his property through necessity, not in order to speculate. It is utterly unrealistic to say he has equal bargaining ability with the money lender. If finally he must sell his home because his financial storm continues to rage, is it not unreasonable and oppressive to permit the money lender further to drive his net sale price down by threatening to foreclose unless the prospective purchaser will agree to pay a higher rate of interest? It is small consolation to such a man to be told, "Well, you don't have to sell; just pay off your mortgage."
Such use of the acceleration clause to extract a higher rate of interest is clearly a restraint upon alienation of the property. This would clearly appear if the provision were that the mortgagor must pay the mortgagee $1,000 if he conveyed the property without consent of the mortgagee. There is no difference in nature or in effect between such a provision and a provision permitting the mortgagee to accelerate the maturity date and foreclose the mortgage unless the proposed purchaser pay the mortgagee a higher rate of interest. Such a restraint on alienation of real property should be held contrary to public policy and void. See: Schwren v. Falls, 170 N.C. 251, 87 S.E. 49 (1915); Christmas v. Winston, 152 N.C. 48, 67 S.E. 58 (1910); Latimer v. Waddell, 119 N.C. 370, 26 S.E. 122 (1896); Pritchard v. Bailey, 113 N.C. 521, 18 S.E. 668 (1893); 5 Tiffany on Real Property, 3d Ed., 1343; Annot., 42 A.L.R.2d 1243, 1302. "Although written as an acceleration clause, the due-on-sale clause directly and fundamentally burdens a mortgagor's ability to alienate as surely and directly as the classical promissory restraint." Volkmer, The Application of the Restraints on Alienation Doctrine to Real Property Security Interests, 58 Iowa L.Rev. 774 (1973).
It is my view that a "Due-on-Sale Clause" is valid only when the mortgagee shows a reasonable basis for belief that the proposed transfer will adversely affect his security interest in the mortgaged property in a way which the covenant to keep in repair will not remedy. It being stipulated in the record that this is not true in the present case, the judgment of the Superior Court should be affirmed.