ROBERT H. JAUDON D/B/A FOXFIRE REALTY v. MICHAEL L. SWINK

No. 8030DC854

(Filed 7 April 1981)

**Brokers and Factors § 6– real estate broker – right to commission – sufficiency of evidence**

In an action by plaintiff real estate broker to recover a commission on property listed with plaintiff by defendant, evidence was sufficient to be submitted to the jury where it tended to show that the oral agreement by which defendant listed his house and acreage for sale was for an indefinite period of time; plaintiff took the ultimate buyer to the property and no one else showed the property to him; two written offers were executed by the buyer and communicated to defendant; though the evidence was contradictory, a jury could find that defendant knew that the ultimate purchaser was the person interested in buying the property; after defendant rejected the second written offer, he advised plaintiff that he was taking the property off the market; the ultimate purchaser and his wife went back to the property the next day and entered into a contract to buy it directly from defendant; and the evidence thus raised an issue as to whether defendant terminated the listing agreement in good faith.

APPEAL by plaintiff from *Leatherwood, Judge.* Judgment entered 5 June 1980 in District Court, JACKSON County. Heard in the Court of Appeals 13 March 1981.

Plaintiff brings this action for a real estate commission arising out of a transaction with defendant. At trial, plaintiff produced evidence that on 27 June 1979 defendant, by oral agreement, listed his house and acreage with plaintiff for sale. The listing agreement was for an indefinite period of time. Defendant originally stated a selling price of $55,000 but later reduced it to $50,000. Plaintiff told defendant that the real estate commission would be six percent. Plaintiff accepted the

listing and commenced efforts to produce a purchaser for defendant's property. Plaintiff advertised the property for sale, secured keys to it, and on 10 August 1979 showed the property to Mr. and Mrs. Donald Hughes. They made a written offer of $42,000 for the property. Plaintiff advised defendant of the Hughes offer and it was rejected by him. On 16 August 1979, the Hughes again visited the property. Defendant and his daughter were at the property on this occasion. That same day Hughes made an offer of $45,000 for the property, which was communicated to defendant on 23 August 1979. He rejected this offer and advised plaintiff that he was taking the property off the market. Later that day, plaintiff told Hughes of the refusal and returned his $1,000 deposit to him. Hughes and his wife went back to the property the next day and entered into a contract to buy it directly from Swink for a price of $46,500. The sale was closed on 17 September 1979. No one other than plaintiff and his wife showed the property to Hughes. Swink and Hughes discussed that the property had been listed for sale with a broker.

At the close of plaintiff's evidence, defendant's motion for a directed verdict was allowed, and plaintiff appeals.

*Holt, Haire & Bridgers, by R. Phillip Haire, for plaintiff appellant.*

*Orman L. Hamilton for defendant appellee.*

MARTIN (Harry C.), Judge.

Of course, it is familiar learning that on defendant's motion for directed verdict, the evidence must be considered in the light most favorable to plaintiff, giving it all reasonable inferences beneficial to plaintiff and resolving all discrepancies in the evidence in plaintiff's favor. *Cutts v. Casey,* 278 N.C. 390, 180 S.E. 2d 297 (1971).

It is the general rule that in order to recover a real estate commission a realtor must show that he procured a purchaser, during the period of the listing agreement, who is ready, willing and able to purchase the property on terms approved by the seller. *Realty Agency, Inc. v. Duckworth & Shelton, Inc.,* 274 N.C. 243, 162 S.E. 2d 486 (1968). In *Realty Agency,* the Court held:

> Ordinarily, a broker with whom an owner's property is listed for sale becomes entitled to his commission whenever

he procures a party who actually contracts for the purchase of the property at a price acceptable to the owner. ... If any act of the broker in pursuance of his authority to find a purchaser is the initiating act which is the procuring cause of a sale ultimately made by the owner, the owner must pay the commsision [sic] provided the case is not taken out of the rule by the contract of employment. ... The broker is the procuring cause if the sale is the direct and proximate result of his efforts or services. The term *procuring cause* refers to "a cause originating or setting in motion a series of events which, without break in their continuity, result in the accomplishment of the prime object of the employment of the broker, which may variously be a sale or exchange of the principal's property, an ultimate agreement between the principal and a prospective contracting party, or the procurement of a purchaser who is ready, willing, and able to buy on the principal's terms." 12 C.J.S. *Brokers* § 91, p. 209 (1938). ...

The law does not permit an owner "to reap the benefits of the broker's labor without just reward" if he has requested a broker to undertake the sale of his property and accepts the results of services rendered at his request. In such case, in the absence of a stipulation as to compensation, he is liable for the reasonable value of those services. ... Of course, the listing agreement can make the payment of commissions dependent upon the broker's obtaining a certain price for the property.

*Id.* at 250-51, 162 S.E. 2d at 491.

Here, the contract of sale to Hughes was entered into the day after Swink terminated the listing agreement. The listing agreement had no definite period of duration; therefore, it was revocable at will by either party, subject to the ordinary requisites of good faith. *Bonn v. Summers*, 249 N.C. 357, 106 S.E. 2d 470 (1959); *Insurance Co. v. Disher*, 225 N.C. 345, 34 S.E. 2d 200 (1945). "Good faith" means an honest intention to abstain from taking any unconscientious advantage of another, even through technicalities of law, together with the absence of all information, notice, or benefit or belief of facts which could render a transaction unconscientious. Black's Law Dictionary 822 (4th ed. rev. 1968).

We hold that the evidence, considered as required on defendant's motion, is sufficient to submit to the trier of the facts the question whether defendant terminated the listing agreement in good faith. An owner cannot ignore the efforts of a real estate broker and escape liability for commissions by terminating a listing agreement for the purpose of avoiding such commissions and dealing directly with a purchaser who was produced as a result of the broker's efforts. *See Cromartie v. Colby,* 250 N.C. 224, 108 S.E. 2d 228 (1959). In *Martin v. Holly,* 104 N.C. 36, 39, 10 S.E. 83, 84 (1889), the Court stated:

> "An agent employed to sell real estate, in finding a purchaser, and bringing him and his principal into communication, and setting on foot negotiations which result in a sale, cannot be deprived of his right to compensation by a discharge prior to the consummation of the sale."

The evidence is also sufficient to support a jury finding that plaintiff produced Hughes as the purchaser of defendant's property. Plaintiff took Hughes to the property and no one else showed the property to Hughes. Two written offers were executed by Hughes and communicated to defendant. Although the evidence is contradictory, a jury could find that defendant knew that Hughes was the person interested in buying the property. On 24 August, when defendant and Hughes signed the contract of purchase, they discussed the prior listing of the property and defendant certainly knew then that Hughes was the person who made the offers for the property. Plaintiff found the purchaser and was engaged in negotiations for the sale when defendant "took the property off the market," then sold it directly to the purchaser the next day. *See Martin v. Holly, supra.* This question was for the twelve. *Lindsey v. Speight,* 224 N.C. 453, 31 S.E. 2d 371 (1944).

The court erred in allowing defendant's motion for a directed verdict and the judgment is

Reversed.

Judges Clark and Arnold concur.