IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA15-796

 Filed: 17 May 2016

Wake County, No. 14 CVS 3108

COLLEEN BLONDELL, Plaintiff,

 v.

SHAKIL AHMED, SHABANA AHMED, MICHAEL FEKETE and SUSAN
ELIZABETH FEKETE, individually, Defendants.

 Appeal by Plaintiff from order entered 12 January 2015 by Judge Howard E.

Manning, Jr., in Wake County Superior Court. Heard in the Court of Appeals 12

January 2016.

 Martin & Gifford, PLLC, by William H. Gifford, Jr., for the Plaintiff-Appellant.

 Jordan Price Wall Gray Jones & Carlton, PLLC, by J. Matthew Waters and
 Joseph E. Propst, for the Defendants-Appellees.

 DILLON, Judge.

 Plaintiff Colleen Blondell (“Agent”) brought this action to collect a real estate

commission she claims is due under a listing agreement (“Listing Agreement”) that

her real estate firm entered into with Defendants Shakil and Shabana Ahmed

(“Sellers”) to sell Sellers’ home. Agent appeals from the trial court’s order granting

the Sellers’ motion for summary judgment. Because we believe that there is a

genuine issue of fact as to whether Sellers breached their duty of good faith and fair
 BLONDELL V. AHMED

 Opinion of the Court

dealing when they negotiated for the termination of the Listing Agreement, we

reverse and remand for further proceedings consistent with this opinion.

 I. Background

 Agent is a real estate broker licensed by the North Carolina Real Estate

Commission. She works as an agent with the firm Kiegiel, LLC d/b/a Keystone

Properties (“Keystone Properties”). Sellers owned a home in Wake County. A

timeline of events necessary for understanding the issues on appeal is as follows:

 A. Parties Enter Into Listing Agreement; Agent Procures Offer

 In March 2013, Sellers and Keystone Properties entered into the Listing

Agreement. The parties used the “Exclusive Right to Sell Listing Agreement” form

produced by the North Carolina Association of REALTORS®, Inc.1 Pursuant to the

Agreement, the listing would be for a period of one year (expiring in March 2014).

 On 3 April 2013, Agent showed Sellers’ home to Michael and Susan Fekete2

(“Buyers”). On 6 April 2013, Buyers made an offer which Agent presented to Sellers.

Sellers promptly rejected the offer. Over the course of the next few weeks, Agent had

a number of communications with both Sellers and Buyers regarding the Sellers’

home.

 1 This Association is a private organization comprised of licensed real estate brokers.
Membership in the Association is not compulsory. The relationship between the Association and its
broker members is analogous to the relationship between licensed attorneys and the North Carolina
Bar Association.
 2 The Feketes were named defendants in this action; however, Agent has since dismissed all

claims against the Feketes.

 -2-
 BLONDELL V. AHMED

 Opinion of the Court

 B. Parties Enter Termination Agreement; Sellers Sell Home To Buyers

 On 22 April 2013, the Sellers informed Agent that they no longer wished to list

their home for sale and of their desire to terminate the Listing Agreement.

Accordingly, Agent prepared the Termination Agreement using another form

provided by the Association of REALTORS® (entitled “Termination of Agency

Agreement and Release,” hereinafter “Termination Agreement”). This Termination

Agreement essentially provided that the parties would no longer be bound by the

Listing Agreement. Further, the Termination Agreement provided that it would

become “effective on the date that it has been signed by both the Parties.” (Emphasis

added.)

 That same evening (22 April), Agent e-mailed Sellers, attaching the

Termination Agreement unsigned. The next day (23 April), Sellers executed the

Termination Agreement and e-mailed it back to Agent.

 Sometime thereafter, but prior to 2 May 2013 – without the knowledge of Agent

– Buyers and Sellers met to discuss a possible transaction. On 2 May 2013, Sellers

and Buyers tentatively agreed to a purchase price for the home. On 9 May 2013,

Buyers presented a written offer to Sellers based on their verbal understanding.

 Prior to executing Buyers’ offer, Sellers contacted Agent about the status of the

Termination Agreement (which Sellers had signed and returned on 23 April). During

 -3-
 BLONDELL V. AHMED

 Opinion of the Court

this communication, Sellers did not disclose to Agent that they had a written offer

from Buyers that they intended to sign.

 On 10 May 2013, Agent executed the Termination Agreement on behalf of

Keystone Properties and e-mailed a copy to Sellers.

 On 11 May 2013, Sellers executed the contract to sell their home to Buyers.

The transaction closed in late June 2013, unbeknownst to Agent.

 Agent commenced this action against Sellers contending that, pursuant to the

Listing Agreement, Sellers became obligated to pay Keystone Properties a real estate

commission when Sellers sold their home to Buyers.3 Sellers answered, alleging that

no commission was due because the Listing Agreement had been terminated in the

Termination Agreement. After a hearing, the trial court entered summary judgment

in favor of Sellers. Agent timely appealed.

 II. Analysis

 The parties agree that the Listing Agreement would entitle Keystone

Properties to a real estate commission in the absence of an effective termination

agreement. Specifically, the Listing Agreement obligated Sellers to pay a commission

if their home sold within the Agreement’s one-year term.

 3 Keystone Properties assigned to Agent all of their rights – including the right to any
commission that may be owed – in the Listing Agreement.

 -4-
 BLONDELL V. AHMED

 Opinion of the Court

 The Termination Agreement, however, unambiguously states that Sellers were

released from any obligation they may otherwise have under the Listing Agreement.

Specifically, the Termination Agreement states:

 2. Termination of Agreement. The Parties agree that
 all rights and obligations arising on account of the [Listing]
 Agreement are hereby terminated, and hereby release each
 other from their respective obligations under the
 Agreement.

 3. Release from Liability. The Parties further release
 and forever discharge each other and their respective
 successors in interest from any and all claims, demands,
 rights and causes of action of whatsoever kind and nature
 arising from the [Listing] Agreement and the agency
 relationship existing between them.

Accordingly, if the Termination Agreement is enforceable, Sellers would be entitled

to summary judgment in this case.

 Agent argues that Sellers should not be allowed to benefit from the

Termination Agreement. Specifically, Agent contends that Sellers breached their

duty of good faith and fair dealing when Sellers negotiated for the termination of the

Listing Agreement without disclosing to Agent or Keystone Properties that Sellers

were negotiating directly with Buyers.

 It is axiomatic that Sellers owed a duty of good faith and fair dealing to

Keystone Properties during the term of the Listing Agreement and during the

negotiation of the termination of that Agreement. Indeed, our Supreme Court has

recently reiterated the long standing principle that there is implied in every contract

 -5-
 BLONDELL V. AHMED

 Opinion of the Court

a covenant of good faith and fair dealing. Arnesen v. Rivers Edge Golf Club, ___ N.C.

___, ___, 781 S.E.2d 1 (2015); see also Great Am. Ins. Co. v. C.G. Tate Constr. Co., 303

N.C. 387, 399, 279 S.E.2d 769, 776 (1981) (recognizing “the common law principle

that implicit in every contract is the obligation of each party to act in good faith”).

Also, our Court has consistently held that “[i]t is a basic principle of contract law that

a party who enters into an enforceable contract is required to act in good faith and to

make reasonable efforts to perform his obligations under the agreement.”

Weyerhaeuser Co. v. Godwin Bldg. Supply Co., 40 N.C. App. 743, 746, 253 S.E.2d 625,

627 (1979).

 The parties dispute when the Listing Agreement was actually terminated.

Sellers contend that the Listing Agreement terminated on 23 April when Sellers

executed the Termination Agreement. Sellers point to the language in Agent’s 22

April e-mail (attaching the Termination Agreement unsigned) in which Agent stated:

 Attached you will find the Termination Agreement for the
 listing of your home. Please sign the form and return it to
 me at your earliest convenience thereby severing any
 obligation we have with one another.

Sellers contend that the e-mail constituted an offer that was accepted when they

signed the agreement on 23 April. However, based on the Parol Evidence Rule, which

has been adopted by our Supreme Court, we cannot consider this e-mail language

because it contradicts the unambiguous language contained in the Termination

Agreement. See Root v. Allstate Ins. Co., 272 N.C. 580, 587, 158 S.E.2d 829, 835

 -6-
 BLONDELL V. AHMED

 Opinion of the Court

(1968) (recognizing the general rule that “when a written instrument is introduced

into evidence, its terms may not be contradicted by parol or extrinsic evidence, and it

is presumed that all prior negotiations are merged into the written instrument”) The

Termination Agreement unambiguously stated that “[t]his Agreement shall be

effective on the date it has been signed by both the Parties.”

 Our Court has recognized that the Parol Evidence Rule is a rule of substantive

law which “prohibits the consideration of evidence as to anything which happened

prior to or simultaneously with the making of a contract which would vary the terms

of the agreement.” Harrell v. First Union Nat. Bank, 76 N.C. App. 666, 667, 334

S.E.2d 109, 110 (1985). In Harrell, the plaintiff signed a “Letter of Consent” with a

bank that provided that certain common stock he owned could be used as collateral

for advances to his son-in-law in the future. Id. At the time of signing, however, the

plaintiff told the loan officer (defendant) that he did not want any advances to be

made to his son-in-law unless he approved the advances, though the “Letter of

Consent” did not require that he approve advances. The loan officer replied, “That’s

right.” Id. Subsequently, several advances were made to the son-in-law secured by

the plaintiff’s stock without the plaintiff’s approval, and the loan officer sold the stock

when the loans were not paid. The plaintiff filed an action for the wrongful sale of

his stock, and this Court affirmed the trial court’s directed verdict in favor of the

bank, holding that the Parol Evidence Rule barred the Court from considering the

 -7-
 BLONDELL V. AHMED

 Opinion of the Court

communication made contemporaneously with the signing of the contract. Id. at 667,

334 S.E.2d at 110-11.

 Here, there is nothing within the four corners of the Termination Agreement

that obfuscates or contradicts the term that it would not be effective until signed by

both parties. Just as this Court did not consider a conversation that the plaintiff had

with a loan officer in Harrell directly contradicting a term in the contract, we cannot

consider the language in Agent’s 22 April e-mail. The Termination Agreement is

unambiguous. See Thompson v. First Citizens Bank & Trust Co., 151 N.C. App. 704,

709, 567 S.E.2d 184, 188 (2002) (“Generally, the parol evidence rule prohibits the

admission of evidence to contradict or add to the terms of a clear and unambiguous

contract.”). Accordingly, we hold that the Listing Agreement was not terminated nor

did the obligations thereunder cease until the Termination Agreement was executed

by Agent (on behalf of Keystone Properties) on 10 May. That is, Sellers’ execution of

the Termination Agreement was an offer to terminate the Listing Agreement, which

was not accepted until the Termination Agreement was executed by Agent.

 Having concluded that the Listing Agreement was still in full effect until 10

May, we conclude that there is evidence which creates a genuine issue of material

fact whether Sellers breached their duty of good faith and fair dealing under that

Agreement. Specifically, prior to 10 May, before Sellers’ offer to terminate the Listing

Agreement was accepted by Agent and while Sellers still owed a duty of good faith

 -8-
 BLONDELL V. AHMED

 Opinion of the Court

and fair dealing toward Agent under the Listing Agreement: (1) Agent presented an

offer from Buyers to Sellers, which would involve the paying of a commission to Agent

under the Listing Agreement; (2) Sellers rejected the offer and then informed Agent

that they no longer wanted to list their house for sale; (3) Sellers made an offer to

Agent to terminate the Listing Agreement; (4) Sellers began negotiating directly with

Buyers; (5) Sellers received a written offer in hand from Buyers that they were

prepared to sign and which would not involve the paying of any real estate

commission; (6) with Buyers’ offer in hand, Sellers contacted Agent and asked her to

accept their offer to terminate the Listing Agreement; (7) Sellers made the request to

Agent without disclosing to Agent that they were about to accept Buyers’ offer; and

(8) Sellers signed Buyers’ offer almost immediately after receiving the fully executed

Termination Agreement from Agent. Clearly, a jury could determine that Sellers

breached their duty of good faith and fair dealing by failing to disclose to Agent the

pending offer when they asked Agent to accept their offer to terminate the Listing

Agreement.

 We are persuaded by our Court’s decision in Jaudon v. Swink, 51 N.C. App.

433, 276 S.E.2d 511 (1981). In Jaudon, the real estate agent had a listing agreement

with a homeowner/seller which was terminable at the will of either party. During

the term of the listing, the agent showed the seller’s home to the eventual buyers

twice. During the second showing, the buyers made an offer through the agent which

 -9-
 BLONDELL V. AHMED

 Opinion of the Court

the seller promptly rejected. The seller then told the agent that he was terminating

their listing agreement. The next day, the buyers went back to the seller’s home and

entered into a contract to purchase the home directly from the seller. Id. at 433-34,

276 S.E.2d at 512. This Court held that the evidence in Jaudon was “sufficient to

submit to the trier of the facts [to determine] whether defendant terminated the

listing agreement in good faith.” Id. at 436, 276 S.E.2d at 513.

 As in Jaudon, there is sufficient evidence in the instant case to raise a genuine

issue of material fact as to whether the Sellers breached their implied contractual

duty of good faith and fair dealing. The questions of whether the Ahmeds breached

their duty of good faith and whether Blondell is entitled to her real estate commission

are issues of fact for the jury to decide. Id.; Lindsey v. Speight, 224 N.C. 453, 455, 31

S.E.2d 371, 372 (1944). Accordingly, the trial court erred in granting the Sellers’

motion for summary judgment.

 REVERSED AND REMANDED.

 Judge ZACHARY concurs.

 Judge BRYANT dissents by separate opinion.

 - 10 -
 No. COA15-796 – Blondell v. Ahmed

 BRYANT, Judge, dissenting.

 The majority opinion reverses and remands the trial court’s order on summary

judgment, determining that there existed a genuine issue of material fact regarding

whether Sellers breached their duty of good faith and fair dealing when they

“negotiated for the termination of the Listing Agreement.” Because I do not see

evidence in the record to indicate a genuine issue of material fact, i.e., that Sellers

violated their duty of good faith and fair dealing, especially where Agent herself

represented that she no longer had an agreement with Sellers, I respectfully dissent.

 I disagree with the majority that the facts are at issue. All parties agree on

the facts and the basic timeline of the relevant events. Therefore, our obligation on

appeal is to review de novo whether the trial court erred as a matter of law in granting

summary judgment. See In re Will of Jones, 362 N.C. 569, 573, 669 S.E.2d 572, 576

(2008).

 In order to reverse the trial court as the majority would do, there has to be

evidence to indicate Sellers intended to deceive or conceal material facts from Agent.

See In re Estate of Loftin, 285 N.C. 717, 722, 208 S.E.2d 670, 674 (1974) (citations

omitted) (holding that in order to obtain relief from a contract on the ground that it

was procured by fraud, a party must show false representation of a past or subsisting

material fact, made with fraudulent intent and with knowledge of its falsity, which

representation was relied upon when the party executed the instrument); see also
 BLONDELL V. AHMED

 BRYANT, J., dissenting

Hester v. Hubert Vester Ford, Inc., ___ N.C. App. ___, ___, 767 S.E.2d 129, 136 (2015)

(holding that where plaintiff presented evidence that defendant intentionally made

false representations which induced plaintiff to sign a contract, plaintiff’s claim for

fraud should survive summary judgment). However, Agent can point to nothing that

would indicate such. Rather, Agent, in her deposition and brief, is able to offer only

vague equivocations as to Sellers’ alleged intent to fraudulently conceal from plaintiff

the existence of the 9 May offer which resulted in the contract executed 11 May 2013.

In fact, in ruling on summary judgment as to Agent’s claims for breach of contract,

fraud, or unjust enrichment, the trial court particularly noted that, in addition to the

records and arguments of counsel, it reviewed the deposition of “Plaintiff Colleen

Blondell,” before determining that defendants were entitled to judgment as a matter

of law.

 Agent’s vague allegations in her complaint and in her deposition fail to

establish a factual basis for her claims and are insufficient to give rise to an inference

of Sellers’ intent to deceive plaintiff. Agent’s allegations fail especially where Sellers

did not initiate contact with Buyers as Sellers did not know the identity of the party

who made the previous offer through Agent until Buyers sent their letter dated 25

April 2013. Indeed, the fact that earlier that same day, on 25 April 2013, Agent

emailed Buyers stating that she no longer worked with Sellers, cuts decidedly against

 2
 BLONDELL V. AHMED

 BRYANT, J., dissenting

Agent’s argument and the majority opinion, that Agent and Sellers’ Listing

Agreement was still valid.

 In Jaudon v. Swink, 51 N.C. App. 433, 276 S.E.2d 511 (1981), upon which the

majority opinion relies, this Court found that because the seller of the real estate in

question was present when the realtor brought the buyer to the home, it could be

inferred that the seller knew the identity of the buyer. Id. at 436, 276 S.E.2d at 513.

 Here, Sellers first came to know the identity of Buyers as a result of Buyers’

25 April 2013 letter to Sellers; the parties never met in person until 30 April 2013.

Despite the fact that both the seller in Jaudon and Sellers here executed contracts to

sell their respective properties the day after their listing agreements with their

realtors terminated (in Jaudon the agreement and termination were both oral), id.

at 433–34, 276 S.E.2d at 512, the facts in the instant case make clear that the

termination of the Listing Agreement was instigated by Agent on 22 April 2013, over

two weeks before Sellers executed a contract to sell their home with Buyers on 10

May 2013, regardless of when Agent ultimately signed the Termination Agreement.

Indeed, Sellers promptly returned the signed Termination Agreement on 23 April

2013, which then remained in Agent’s possession, unsigned for seventeen days. The

majority characterizes this transaction—Sellers’ signing of the Termination

Agreement on 23 April 2013—as an offer by Sellers to terminate the Listing

 3
 BLONDELL V. AHMED

 BRYANT, J., dissenting

Agreement, which offer was not accepted until signed by Agent on 10 May 2013. I

disagree with this characterization.

 Nevertheless, even assuming Agent and Sellers’ obligations towards one

another were terminated at the latest on 10 May 2013, as Agent cannot point to any

evidence in the record that would give rise to an inference of fraud or

misrepresentation to survive a motion for summary judgment, I would affirm the trial

court’s entry of summary judgment in favor of Sellers.

 4