DILLON, Judge.
*481 Plaintiff Colleen Blondell ("Agent") brought this action to collect a real estate commission she claims is due under a listing agreement ("Listing Agreement") that her real estate firm entered into with Defendants Shakil and Shabana Ahmed ("Sellers") to sell Sellers' home. Agent appeals from the trial court's order granting the Sellers' motion for summary judgment. Because we believe that there is a genuine issue of fact as to whether Sellers breached their duty of good faith and fair dealing when they negotiated for the termination of the Listing Agreement, we reverse and remand for further proceedings consistent with this opinion.
I. Background
Agent is a real estate broker licensed by the North Carolina Real Estate Commission. She works as an agent with the firm Kiegiel, LLC d/b/a Keystone Properties ("Keystone Properties"). Sellers owned a home in Wake County. A timeline of events necessary for understanding the issues on appeal is as follows:
A. Parties Enter Into Listing Agreement; Agent Procures Offer
In March 2013, Sellers and Keystone Properties entered into the Listing Agreement. The parties used the "Exclusive Right to Sell Listing Agreement" form produced by the North Carolina Association of REALTORS®, Inc.[1] Pursuant to the Agreement, the listing would be for a period of one year (expiring in March 2014).
On 3 April 2013, Agent showed Sellers' home to Michael and Susan Fekete[2] ("Buyers"). On 6 April 2013, Buyers made an offer which Agent presented to Sellers. Sellers promptly rejected the offer. Over the course of the next few weeks, Agent had a number of communications with both Sellers and Buyers regarding the Sellers' home.
*482 B. Parties Enter Termination Agreement; Sellers Sell Home To Buyers
On 22 April 2013, the Sellers informed Agent that they no longer wished to list their home for sale and of their desire to terminate the Listing Agreement. Accordingly, Agent prepared the Termination Agreement using another form provided by the Association of REALTORS® (entitled "Termination of Agency Agreement and Release," hereinafter "Termination Agreement"). This Termination Agreement essentially provided that the parties would no longer be bound by the Listing Agreement. Further, the Termination Agreement provided that it would become "effective on the date that it has been signed by both the Parties." (Emphasis added.)
That same evening (22 April), Agent e-mailed Sellers, attaching the Termination Agreement unsigned. The next day (23 April), Sellers executed the Termination Agreement and e-mailed it back to Agent.
Sometime thereafter, but prior to 2 May 2013-without the knowledge of Agent- *407 Buyers and Sellers met to discuss a possible transaction. On 2 May 2013, Sellers and Buyers tentatively agreed to a purchase price for the home. On 9 May 2013, Buyers presented a written offer to Sellers based on their verbal understanding.
Prior to executing Buyers' offer, Sellers contacted Agent about the status of the Termination Agreement (which Sellers had signed and returned on 23 April). During this communication, Sellers did not disclose to Agent that they had a written offer from Buyers that they intended to sign.
On 10 May 2013, Agent executed the Termination Agreement on behalf of Keystone Properties and e-mailed a copy to Sellers.
On 11 May 2013, Sellers executed the contract to sell their home to Buyers. The transaction closed in late June 2013, unbeknownst to Agent.
Agent commenced this action against Sellers contending that, pursuant to the Listing Agreement, Sellers became obligated to pay Keystone Properties a real estate commission when Sellers sold their home to Buyers.[3] Sellers answered, alleging that no commission was due because the Listing Agreement had been terminated in the Termination *483 Agreement. After a hearing, the trial court entered summary judgment in favor of Sellers. Agent timely appealed.
II. Analysis
The parties agree that the Listing Agreement would entitle Keystone Properties to a real estate commission in the absence of an effective termination agreement. Specifically, the Listing Agreement obligated Sellers to pay a commission if their home sold within the Agreement's one-year term.
The Termination Agreement, however, unambiguously states that Sellers were released from any obligation they may otherwise have under the Listing Agreement. Specifically, the Termination Agreement states:
2. Termination of Agreement. The Parties agree that all rights and obligations arising on account of the [Listing] Agreement are hereby terminated, and hereby release each other from their respective obligations under the Agreement.
3. Release from Liability. The Parties further release and forever discharge each other and their respective successors in interest from any and all claims, demands, rights and causes of action of whatsoever kind and nature arising from the [Listing] Agreement and the agency relationship existing between them.
Accordingly, if the Termination Agreement is enforceable, Sellers would be entitled to summary judgment in this case.
Agent argues that Sellers should not be allowed to benefit from the Termination Agreement. Specifically, Agent contends that Sellers breached their duty of good faith and fair dealing when Sellers negotiated for the termination of the Listing Agreement without disclosing to Agent or Keystone Properties that Sellers were negotiating directly with Buyers.
It is axiomatic that Sellers owed a duty of good faith and fair dealing to Keystone Properties during the term of the Listing Agreement and during the negotiation of the termination of that Agreement. Indeed, our Supreme Court has recently reiterated the long standing principle that there is implied in every contract a covenant of good faith and fair dealing. Arnesen v. Rivers Edge Golf Club, 368 N.C. 440, 450-451, 781 S.E.2d 1, 9 (2015) ; see also Great Am. Ins. Co. v. C.G. Tate Constr. Co., 303 N.C. 387, 399, 279 S.E.2d 769, 776 (1981) (recognizing "the common law *484 principle that implicit in every contract is the obligation of each party to act in good faith"). Also, our Court has consistently held that "[i]t is a basic principle of contract law that a party who enters into an enforceable contract is required to act in good faith and to make reasonable efforts to perform his obligations under the agreement." Weyerhaeuser Co. v. Godwin Bldg. Supply Co., 40 N.C.App. 743, 746, 253 S.E.2d 625, 627 (1979).
The parties dispute when the Listing Agreement was actually terminated. Sellers *408 contend that the Listing Agreement terminated on 23 April when Sellers executed the Termination Agreement. Sellers point to the language in Agent's 22 April e-mail (attaching the Termination Agreement unsigned ) in which Agent stated:
Attached you will find the Termination Agreement for the listing of your home. Please sign the form and return it to me at your earliest convenience thereby severing any obligation we have with one another.
Sellers contend that the e-mail constituted an offer that was accepted when they signed the agreement on 23 April. However, based on the Parol Evidence Rule, which has been adopted by our Supreme Court, we cannot consider this e-mail language because it contradicts the unambiguous language contained in the Termination Agreement. See Root v. Allstate Ins. Co., 272 N.C. 580, 587, 158 S.E.2d 829, 835 (1968) (recognizing the general rule that "when a written instrument is introduced into evidence, its terms may not be contradicted by parol or extrinsic evidence, and it is presumed that all prior negotiations are merged into the written instrument") The Termination Agreement unambiguously stated that "[t]his Agreement shall be effective on the date it has been signed by both the Parties. "
Our Court has recognized that the Parol Evidence Rule is a rule of substantive law which "prohibits the consideration of evidence as to anything which happened prior to or simultaneously with the making of a contract which would vary the terms of the agreement." Harrell v. First Union Nat. Bank, 76 N.C.App. 666, 667, 334 S.E.2d 109, 110 (1985). In Harrell, the plaintiff signed a "Letter of Consent" with a bank that provided that certain common stock he owned could be used as collateral for advances to his son-in-law in the future. Id. At the time of signing, however, the plaintiff told the loan officer (defendant) that he did not want any advances to be made to his son-in-law unless he approved the advances, though the "Letter of Consent" did not require that he approve advances. The loan officer replied, "That's right." Id.
*485 Subsequently, several advances were made to the son-in-law secured by the plaintiff's stock without the plaintiff's approval, and the loan officer sold the stock when the loans were not paid. The plaintiff filed an action for the wrongful sale of his stock, and this Court affirmed the trial court's directed verdict in favor of the bank, holding that the Parol Evidence Rule barred the Court from considering the communication made contemporaneously with the signing of the contract. Id. at 667, 334 S.E.2d at 110-11.
Here, there is nothing within the four corners of the Termination Agreement that obfuscates or contradicts the term that it would not be effective until signed by both parties. Just as this Court did not consider a conversation that the plaintiff had with a loan officer in Harrell directly contradicting a term in the contract, we cannot consider the language in Agent's 22 April e-mail. The Termination Agreement is unambiguous. See Thompson v. First Citizens Bank & Trust Co., 151 N.C.App. 704, 709, 567 S.E.2d 184, 188 (2002) ( "Generally, the parol evidence rule prohibits the admission of evidence to contradict or add to the terms of a clear and unambiguous contract."). Accordingly, we hold that the Listing Agreement was not terminated nor did the obligations thereunder cease until the Termination Agreement was executed by Agent (on behalf of Keystone Properties) on 10 May. That is, Sellers' execution of the Termination Agreement was an offer to terminate the Listing Agreement, which was not accepted until the Termination Agreement was executed by Agent.
Having concluded that the Listing Agreement was still in full effect until 10 May, we conclude that there is evidence which creates a genuine issue of material fact whether Sellers breached their duty of good faith and fair dealing under that Agreement. Specifically, prior to 10 May, before Sellers' offer to terminate the Listing Agreement was accepted by Agent and while Sellers still owed a duty of good faith and fair dealing toward Agent under the Listing Agreement: (1) Agent presented an offer from Buyers to Sellers, which would involve the paying of a commission to Agent under the Listing Agreement; (2) Sellers rejected the offer and then informed Agent that they no longer wanted to list their house for sale; (3) Sellers *409 made an offer to Agent to terminate the Listing Agreement; (4) Sellers began negotiating directly with Buyers; (5) Sellers received a written offer in hand from Buyers that they were prepared to sign and which would not involve the paying of any real estate commission; (6) with Buyers' offer in hand, Sellers contacted Agent and asked her to accept their offer to terminate the Listing Agreement; (7) Sellers made the request to Agent without disclosing to Agent that they were *486 about to accept Buyers' offer; and (8) Sellers signed Buyers' offer almost immediately after receiving the fully executed Termination Agreement from Agent. Clearly, a jury could determine that Sellers breached their duty of good faith and fair dealing by failing to disclose to Agent the pending offer when they asked Agent to accept their offer to terminate the Listing Agreement.
We are persuaded by our Court's decision in Jaudon v. Swink, 51 N.C.App. 433, 276 S.E.2d 511 (1981). In Jaudon, the real estate agent had a listing agreement with a homeowner/seller which was terminable at the will of either party. During the term of the listing, the agent showed the seller's home to the eventual buyers twice. During the second showing, the buyers made an offer through the agent which the seller promptly rejected. The seller then told the agent that he was terminating their listing agreement. The next day, the buyers went back to the seller's home and entered into a contract to purchase the home directly from the seller. Id. at 433-34, 276 S.E.2d at 512. This Court held that the evidence in Jaudon was "sufficient to submit to the trier of the facts [to determine] whether defendant terminated the listing agreement in good faith." Id. at 436, 276 S.E.2d at 513.
As in Jaudon, there is sufficient evidence in the instant case to raise a genuine issue of material fact as to whether the Sellers breached their implied contractual duty of good faith and fair dealing. The questions of whether the Ahmeds breached their duty of good faith and whether Blondell is entitled to her real estate commission are issues of fact for the jury to decide. Id.; Lindsey v. Speight, 224 N.C. 453, 455, 31 S.E.2d 371, 372 (1944). Accordingly, the trial court erred in granting the Sellers' motion for summary judgment.
REVERSED AND REMANDED.
Judge ZACHARY concurs.
Judge BRYANT dissents by separate opinion.

This Association is a private organization comprised of licensed real estate brokers. Membership in the Association is not compulsory. The relationship between the Association and its broker members is analogous to the relationship between licensed attorneys and the North Carolina Bar Association.

The Feketes were named defendants in this action; however, Agent has since dismissed all claims against the Feketes.

Keystone Properties assigned to Agent all of their rights-including the right to any commission that may be owed-in the Listing Agreement.