W. OSMOND SMITH III v. JACK MITCHELL AND WIFE, LAURA MITCHELL, AND THOMAS G. BARBER AND WIFE, SANDRA M. BARBER

No. 127

(Filed 15 August 1980)

1. **Deeds § 21; Vendor and Purchaser § 1– restraint on alienation – preemptive rights**
   Certain restrictions on a landowner's right to alienate his property, if defined as preemptive rights and if carefully limited in duration and price, are not void *per se* and will be enforced if reasonable.

2. **Deeds § 21; Vendor and Purchaser § 1– preemptive right defined**
   A preemptive right requires that property must first be offered to the conveyor or his heirs or to some specially designated person before it may be sold to another party.

3. **Deeds § 21; Vendor and Purchaser § 1– reasonableness of preemptive right – duration and price**
   Two primary considerations dictate the reasonableness of a preemptive right: the duration of the right and the provisions it makes for determining the price of exercising the right.

4. **Deeds § 21; Vendor and Purchaser § 1– preemptive right – rule against perpetuities – determination of price**
   A preemptive right is reasonable if the duration does not violate the rule against perpetuities and if it links the price to the fair market value of the land or to the price the seller is willing to accept from third parties.

Smith v. Mitchell

**5.  Deeds § 21; Vendor and Purchaser § 1– validity of preemptive right**

 A restrictive covenant which required any grantee of certain land who desired to sell such land to offer the grantors the option to repurchase at a price no higher than the grantee was willing to accept from any other purchaser and which provided that the right should last the lifetime of the male grantor plus twenty years was reasonable as to price and time and created a valid preemptive right.

On discretionary review of a decision of the Court of Appeals, 44 N.C. App. 474, 261 S.E. 2d (1980), affirming the judgment of *Reid,* Judge, entered at the 12 February 1979 Session of Superior Court, CASWELL County, granting summary judgment for defendants.

We address the questions (1) whether *any* restriction on the right to alienate land, even if such restriction is limited as to time and certain as to price, is void as an impermissible restraint on alienation, and (2) whether, if such a restriction is not void *per se,* the covenant here presented is nevertheless an unreasonable restriction on defendants' right to freely alienate their land.

 *W. Osmond Smith III, Attorney Pro Se, and Ramsey, Hubbard & Galloway, by Mark Galloway, for plaintiff-appellant.*

 *Latham, Wood & Balog by B.F. Wood and Steve A. Balog for defendant-appellees.*

CARLTON, Justice.

I.

The record reveals that in 1967 W.O. Smith, Jr., and his wife, Roberta K. Smith, placed certain restrictive covenants expressly running with the land on a plat of real property they owned in Caswell County. In addition to the usual covenants limiting development on the plat to residential dwellings of a certain size and environmental soundness, the Smiths' duly recorded restrictive covenants included Article XIV. which provided:

 If any future owner of lands herein described shall desire to sell the lands owned by him, he shall offer the

parties of the first part the option to repurchase said property at a price no higher than the lowest price he is willing to accept from any other purchaser. Parties of the first part agree to exercise said option or to reject same in writing within 14 days of said offer. This covenant shall be binding on the parties of the first part and their heirs, successors, administrators, and executors or assigns for as long as W. Osmond Smith, Jr. shall live and for 20 years from the date of his death unless sooner rescinded.

In 1973, plaintiff, W. Osmond Smith III, succeeded W.O. Smith, Jr. and Roberta K. Smith in interest to the land as their heir, successor and assignee. Plaintiff deeded Lot No. 16 in the plat to defendants Mitchell on 26 September 1974. The Mitchells' deed was made subject to all recorded restrictive convenants, including Article XIV., quoted above. In July 1975, defendants Mitchell deeded Lot No. 16 to defendants Barber without first offering the land to plaintiff as they were required to do under the terms of Article XIV. Defendants Mitchell did this despite plaintiff's notification to them that he stood ready, willing, and able to purchase the lot.

Plaintiff thereafter sued for specific performance, or, in the alternative, for damages of some $2,500.00 for breach of the restrictive covenant. Defendant families each counterclaimed for damages in excess of $5,000.00 alleging breach of certain warranties in their deeds and also alleging that plaintiff's lawsuit had clouded their title.

Both sides moved for summary judgment. The trial court granted summary judgment for defendants, stating that Article XIV. was an unlawful restraint on the right to freely alienate property, was against public policy and was therefore void. Plaintiff appealed to the Court of Appeals. That court affirmed the trial court.

We granted plaintiff's petition for discretionary review 4 January 1980.

[1] The Court of Appeals held "squarely" that "*any* restriction on a landowner's right to freely alienate his property, even

though limited as to time and certain as to price, is void as an invalid restraint on alienation." 44 N.C. App. at 476, 261 S.E. 2d at 233 (emphasis in original). We disagree. Certain such restrictions on alienability, if defined as preemptive rights and if carefully limited in duration and price, are not void *per se* and will be enforced if reasonable. Moreover, we find the specific restrictive covenant before us here to be a reasonable preemptive right which is not void. We therefore reverse the Court of Appeals.

## II.

[2] A preemptive right "requires that, before the property conveyed may be sold to another party, it must first be offered to the conveyor or his heirs, or to some specially designated person." 6 *American Law of Property* § 26.64 at 506-07 (1952). *See also Restatement of the Law of Property* § 413; L. Simes & A. Smith, *The Law of Future Interests* § 1154 (2d ed. 1956); 6 R. Powell, *The Law of Real Property* § 842 at 12-13 (Rohan ed. 1979); Christopher, *Options to Purchase Real Property in North Carolina*, 44 N.C. L. Rev. 63, 66 (1965). Sometimes termed a "right of first refusal," Christopher, *supra,* preemptive provisions, while analogous to options, are technically distinguishable. An option creates in its holder the power to compel sale of land, 6 *American Law of Property, supra* at § 26.64; Simes & Smith, *supra* at § 1154, n. 44. A preemptive provision, on the other hand, creates in its holder only the right to buy land before other parties if the seller decides to convey it. 6 *American Law of Property, supra* at § 26.64; Simes & Smith, *supra* at § 1154, n. 44. Preemptive provisions may be contained in leases, *see, e.g., R.J. Reynolds Realty Company v. Logan*, 216 N.C. 26, 3 S.E. 2d 280 (1939), in contracts, *see, e.g., Bennett Veneer Factors, Inc. v. Brewer*, 73 Wash. 2d 849, 853-54, 441 P. 2d 128, 132 (1968), or, as is the case here, in restrictive covenants contained in deeds or recorded in chains of title.

The defendants and the Court of Appeals relied on *Hardy v. Galloway*, 111 N.C. 519, 15 S.E. 890 (1892), as authority for the proposition that *any* preemptive right is an impermissible restraint on alienation in North Carolina. We believe defendants and the Court of Appeals have misapplied *Hardy v. Galloway* for the following reasons.

Smith v. Mitchell

First, the policy considerations behind the common law prohibition of restraints on alienation have never absolutely forbidden all such restraints. Thus the law has long allowed such indirect restraints as conveying a fee subject to a possibility of reverter or to a condition subsequent. Furthermore, while the rationale underlying the common law prohibition of direct restraints on alienation has been traced to the necessity of maintaining a society controlled primarily by its living members and the desirability of facilitating the utilization of wealth, 4 *Restatement of the Law of Property, Introductory Note to Part II* at p. 2379 (1944), the policy absolutely favoring alienability has always conflicted with another common law tenet that one who has property should be able to convey it subject to whatever condition he or she may desire to impose on the conveyance. *Id.* at p. 2380. *See also* J. Webster, *Real Estate Law in North Carolina* § 344 at 432 (1971).

Faced with this tension, the law has evolved in such a way that some direct restraints on alienation are premissible where the goal justifies the limit on the freedom to alienate, 4 *Restatement of the Law of Property, Introductory Note, supra* at p. 2380, or where the interference with alienation in a particular case is so negligible that the major policies furthered by freedom of alienation are not materially hampered, *id.* Thus the general rule is that a restraint on alienation which provides that the property cannot be alienated, a disabling restraint, Simes & Smith, *supra* at § 1131, *Restatement of the Law of Property* § 404, is *per se* invalid, Simes & Smith, *supra* at § 1137; *Restatement of the Law of Property* § 406, while restraints which provide only that someone's estate may be forfeited or be terminated if he alienates, or that provides damages must be paid if he alienates, may be upheld if reasonable. *Restatement of the Law of Property* § 406.

As applied in other jurisdictions, these principles have frequently led courts to uphold preemptive rights when those rights were reasonable. *See, e.g.,* Annot., 40 A.L.R. 3d 920 (1971 & Supp. 1979), and cases cited therein. Their reasoning appears grounded upon the conviction that any interference of a preemptive right with freedom of alienation is so negligible that the major policies of utilization of wealth and economy of

land control are not hampered. Indeed, some courts have gone so far as to state that the preemptive right does not limit alienability but enhances it, as the seller is provided two buyers instead of one. *Watergate Corporation v. Reagan*, 321 So. 2d 133, 136 (Fla. App. 1975). Other courts have reasoned that the primary purpose of a preemptive right is not to *prevent* an owner from alienating property but to enable a grantor to reacquire it. *See, e.g., Lantis v. Cook*, 342 Mich. 347, 69 N.W. 2d 849 (1955); Simes & Smith, *supra* at § 1154 at 61. It seems clear, then, that the minimal interference with alienability presented by a preemptive right does little violence to the primary reason for prohibiting restraints on alienation in the first place, and should not be *per se* void.

Secondly, the reasons courts uphold the nearest analog to preemptive rights, the option, are equally applicable to preemptive provisions. Options have long been upheld as accepted commercial devices to aid in the disposition of property. *Cf. American Law of Property, supra,* § 26.66 at p. 509 (option is "useful and necessary device" which becomes obnoxious to public policy only when unlimited in time). In *Pure Oil Company v. Baars*, 224 N.C. 612, 31 S.E. 2d 854 (1944), the grantor deeded land to defendants but retained an option to repurchase. Defendants asserted the option was void. The Court upheld the option and refused to void it because it was "an integral part of the transaction and it would be inequitable to allow the defendants to claim the property under deed . . . and at the same time annul the essential terms of its acquisition. If the option is to go out, so must the deed which induced it." *Id.* at 615, 31 S.E. 2d at 856. By analogy here, the preemptive provision in the deed is an integral part of the bargained-for consideration in the sale of the land to defendants. Just as the commercial device of the option is upheld, if it is reasonable, so too the provisions of a preemptive right should be upheld if reasonable, particularly here where the preemptive right appears to be part of a commercial exchange, bargained for at arm's length.

Thirdly, the preemptive right is a useful tool for creating planned and orderly development, again analogous to similar devices upheld by courts of this State. As plaintiff's intestates attempted here, landowners and developers frequently try to

make their land more attractive and desirable to purchasers by establishing a protected residential community free from non-conforming housing and non-residential uses, Webster, *supra* at § 344. Settled law in this jurisdiction upholds such restrictive covenants, insuring privately planned development, when those covenants do not materially impair the beneficial enjoyment of the land or violate the public good. *See* Webster, *supra* at § 344 and cases cited therein. A preemptive covenant in a deed is simply one more way of protecting an area by providing that the original planner has some continuing control over his creation. To hold such a provision void *per se* is an unnecessary limiting of the right of a developer and is in contradiction to a general trend to uphold restrictive covenants running with the land if those covenants are reasonable.[1]

Viewed against this framework, defendants' insistence that *Hardy v. Galloway, supra,* prohibits *any* restriction on alienability in this jurisdiction is misguided. *Hardy v. Galloway* involved a preemptive provision which provided that grantors were to have the right of first refusal if their grantees ever decided to reconvey the land. If the grantees failed to allow the grantor this "option," the grantees' deed was "null and void." 111 N.C. at 520, 15 S.E. at 890.

In striking this provision as void, the Court in *Hardy v. Galloway* emphasized that the preemptive right included neither a statement as to the duration of the right nor a method for calculating the price of exercising it. Nowhere did the Court state that *any* restraint on alienation was prohibited. Nowhere did it state that *any* preemptive provision in a deed was void as an impermissible restraint on alienation.

Indeed, decisions of this Court subsequent to *Hardy v. Galloway* indicate that the holding there is authority only when voiding *unreasonable* restraints on alienation. Thus when a

---

[1]Generally, however, in this jurisdiction restrictive covenants are strictly construed. We do not believe such a construction necessarily indicates judicial disfavor over the concept of restrictive covenants, but is merely an attempt to prevent future litigation over expanding definitions of specific restrictions.

restrictive covenant unreasonably limited a grantee's right to convey only to one small group, this Court cited *Hardy v. Galloway* when striking the restriction. *See, e.g., Norwood v. Crowder,* 177 N.C. 469, 99 S.E. 345 (1919); *Brooks v. Griffin,* 177 N.C. 7, 97 S.E. 730 (1919). When the restrictive covenant totally prevented alienation for a certain period of time, again this Court cited *Hardy v. Galloway* in voiding the restriction, *see, e.g., Welch v. Murdock,* 192 N.C. 709, 135 S.E. 611 (1926); *Stokes v. Dixon,* 182 N.C. 323, 108 S.E. 913 (1921); *Christmas v. Winston,* 152 N.C. 48, 67 S.E. 58 (1910); *Wool v. Fleetwood,* 136 N.C. 460, 48 S.E. 785 (1904); *Latimer v. Waddell,* 119 N.C. 370, 26 S.E. 122 (1896); and *Pritchard v. Bailey,* 113 N.C. 521, 18 S.E. 668 (1893), as it did again when voiding restrictions where the grantor purported to give a fee but imposed restrictive covenants limiting an estate in effect to a trust, *see, e.g., Schwren v. Falls,* 170 N.C. 251, 87 S.E. 49 (1915); *Munroe v. Hall,* 97 N.C. 206, 1 S.E. 651 (1887). In all these cases limitation on the ability to alienate was absolute either in express terms or in practical effect. *See generally Crockett v. First Federal Savings & Loan Association,* 289 N.C. 620, 224 S.E. 2d 580 (1976). The only time, to our knowledge, that this Court reviewed a preemptive right limited as to price and duration, it did not, out of hand, void the provision, but remanded the case to add a necessary third party to the action. *See Story v. Walcott,* 240 N.C. 622, 83 S.E. 2d 498 (1954). The inference is clear and we so hold that certain preemptive rights, if reasonable, may be upheld; *Hardy v. Galloway* stands only for the proposition that preemptive provisions which are unreasonable are void as imposing impermissible restraints on alienation.

## III.

The question remains whether the preemptive right before us, while not *per se* void, is nevertheless an unreasonable restraint on alienation.

[3] *Hardy v. Galloway, supra,* makes clear that two primary considerations dictate the reasonableness or unreasonableness of a preemptive right: the duration of the right and the provisions it makes for determining the price of exercising the right.

In *Hardy,* the preemptive provision contained neither a method for determining price of the land nor a time limit on the right to exercise the first refusal. Such vagueness was fatal, the Court held.

The general rule is that as long as the price provision in a preemptive right provides that the price shall be determined either by the marketplace or by the seller's desire to sell, a preemptive right is reasonable if its duration does not violate the rule against perpetuities. *Restatement of the Law of Property* § 413. *But see American Law of Property, supra* at § 26.66, suggesting neither the rule against perpetuities, nor apparently any time limit, should apply despite considerable authority *contra.*

While some courts have not imposed the *Restatement's* rule against perpetuities limit, and have only stated that the duration of a preemptive right must be for a reasonable time, or have said nothing about time, *see American Law of Property, supra* at § 26.66 and cases cited therein, most generally agree there must be some limit on time, and all agree that reasonableness in pricing includes some way of linking the price to the fair market value of the land or to the price the seller is willing to take from third parties. *Restatement of the Law of Property* § 413; 6 Powell, *supra* at § 842, Simes & Smith, *supra* at 1154; *American Law of Property, supra* at 26.65.

**[4]** We believe the better rule is to limit the duration of the right to a period within the rule against perpetuities and thus avoid lengthy litigation over what is or is not a reasonable time within the facts of any given case. We further agree with the authorities that a reasonable price provision in a preemptive right is one which somehow links the price to the fair market value of the land, or to the price the seller is willing to accept from third parties.

**[5]** Viewed against these requirements, the terms of the preemptive right *sub judice* are reasonable. The provisions of Article XIV. expressly provide that the preemptive right here shall last the lifetime of the grantor, W.O. Smith, Jr., plus *twenty* years. This is well within the rule against perpetuities

---

Smith v. Mitchell

---

requirement that a property interest shall vest, if at all, within a life-in-being plus *twenty-one* years.

Defendants here argue, however, that Article XVII. of the grant extends the right beyond the permissible time. That Article provides: "covenants ... are to run with the land and shall be binding ... until January 1, 1985, at which time the said restriction shall automatically extend for successive periods of ten years each unless by the written consent of the owners ... agree [sic] to change said restrictions ... ."

We disagree with defendants. Although usually applied in statutory construction, the maxim "the specific controls the general," is no less applicable here. *See generally,* 73 Am. Jur. 2d, *Statutes* § 257 (1974). The specific limitation contained in Article XIV., not the general limitations of Article XVII., controls the time that the preemptive right applies. This time is well within the period of the rule against perpetuities, and the plaintiff is seeking to exercise his preemptive right well within the time provided by Article XIV.

In like manner, the provisions of Article XIV. clearly reflect a price tied to the fair market price of the land, or the price that the seller is willing to accept from third parties. Here the grantor provided that the price the grantor or his successor was to pay upon exercise of the right was "a price no higher than the lowest price [grantee] is willing to accept from any other purchaser." This provision is clearly reasonable and imposes no undue restraint upon defendants' ability to alienate their land.

Defendants vigorously argue however that upholding both preemptive rights in general and the reasonableness of this particular preemptive right denies them the right to give their land as a gift or devise. We believe defendants are misstating the case. By its very terms, the preemptive right is exercisable only when and if the seller decides to *sell*, not give or devise his land. Defendants continue to have the unhampered right to give or devise.

The preemptive clause before us, therefore, is not void *per se* nor is it an unreasonable restraint on alienation. Summary judgment for the defendants was improperly granted.

Accordingly, we reverse the decision of the Court of Appeals and remand this case to that court to remand to the trial court for further proceedings in accordance with this opinion.

Because of the analogy between preemptive rights and options to purchase land, on remand we note this case will be controlled by the usual rules in this jurisdiction pertaining to specific performance. These include the ability of the preemptive right holder to enforce that preemptive right against subsequent purchasers for value who are charged with notice of the right in the recorded chain of title, *Chandler v. Cameron*, 229 N.C. 562, 47 S.E. 2d 528 (1948), provided there is no equitable matter precluding this ability.

Reversed and remanded.