IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-1008

Filed: 7 May 2019

New Hanover County, No. 16 CVS 1449

K4C6R, LLC, PORTERS NECK PLANTATION, INC. and FOREST CREEK PLANTATION, INC., Plaintiffs,

v.

JOHN A. ELMORE, II, PORTERS NECK COMPANY, INC., and FOREST CREEK VENTURES, INC., Defendants.

Appeal by defendants from order entered 29 December 2017 by Judge Charles H. Henry in New Hanover County Superior Court. Heard in the Court of Appeals 27 March 2019.

> *Murchison, Taylor & Gibson PLLC, by Andrew K. McVey, for plaintiff-appellees.*
>
> *Law Offices of G. Grady Richardson, Jr., P.C., by G. Grady Richardson, Jr., for defendant-appellants.*

ARROWOOD, Judge.

John A. Elmore, II ("Mr. Elmore"), Porters Neck Company, Inc. ("PNC"), and Forest Creek Ventures, Inc. ("FCV") (collectively, "defendants") appeal from an order denying their motion for summary judgment in part, and granting it in part. For the reasons stated herein, we affirm in part, and reverse in part.

I.      Background

Mr. Elmore and Mr. Lionel L. Yow, Jr. ("Mr. Yow") formed PNC in or about 1991 to own and develop residential real property in Porters Neck. Thereafter, Mr. Elmore and Mr. Yow formed FCV to own and develop residential real property in Forest Creek. Mr. Yow filed for bankruptcy in 2011. During the administration of the bankruptcy, K4C6R, LLC ("K4C6R") successfully bid on Mr. Yow's interest in PNC and FCV, resulting in Mr. Elmore and K4C6R each owning fifty percent (50%) of PNC and FCV.

Due to disputes between the two owners, the parties executed a written contract (the "division agreement") the intent of which was to distribute half of the real estate assets each to Mr. Elmore and to K4C6R respectively. To that end, the division agreement distributed fifty percent (50%) of PNC and FCV's assets to K4C6R in exchange for its shares of stock in the PNC and FCV companies. Porters Neck Plantation, Inc. ("PNP") was established as K4C6R's successor entity with respect to the properties in Porters Neck that K4C6R received in the division, and Forest Creek Plantation, Inc. ("FCP") was established as K4C6R's successor entity with respect to its properties in Forest Creek. The division agreement contained a right of first refusal ("ROFR"), which provides:

> K4C6R, on the one hand, and PNC and FCV, on the other, each grants the other a right of first refusal with respect to the sale of the undeveloped Forest Creek property, to be triggered by a bona fide third[-]party offer to purchase the undeveloped property, provided, however, that this right of first refusal shall apply only to cash-only sales.

On or about 30 September 2015, FCP received an offer to purchase all of FCP's developed and undeveloped property ("the third-party offer" or "the offer"). Although the ROFR is only for undeveloped Forest Creek property, the third-party offer did not allocate the amount being offered for the undeveloped property. FCP forwarded the offer to defendants, who inquired what portion of the offer was allocated to undeveloped property. FCP did not provide this information, and defendants did not waive the ROFR rights or make an offer. Eventually, the offer expired.

On 2 May 2016, K4C6R, FCP, and PNP (collectively, "plaintiffs") filed a complaint against defendants seeking declaratory judgment as to the parties' rights under the division agreement and injunctive relief, and to recover damages for breach of contract.

Defendants answered the complaint and filed counterclaims on or about 9 September 2016. Plaintiffs answered the counterclaims on 10 November 2016. On 20 November 2016, defendants moved for summary judgment. The matter came on for hearing before the Honorable Charles H. Henry on 6 December 2017, in New Hanover Superior Court.

The trial court entered an order on 29 December 2017 granting summary judgment in part and denying it in part. Conclusion of law 5 of the order interprets the division agreement's ROFR as follows.

a. That the right of first refusal possessed by Porters Neck

Company Inc. and Forest Creek Ventures, Inc. is limited to offers that contemplate the cash sale of undeveloped property within the Forest Creek subdivision or the cash sale of developed property and undeveloped property within the Forest Creek subdivision where the offer delineates the amount of the offer that pertains to the undeveloped property. This same interpretation applies to K4C6R's right of first refusal as well.

b. The Division Agreement requires that in order to entertain any "cash only" offers that contemplate the sale of any undeveloped property, the offeror must allocate the amount being offered for the undeveloped property so a party can decide whether to exercise its right of first refusal.

c. If presented with a cash offer to purchase undeveloped property within the Forest Creek subdivision by a bona fide third[-]party, Porters Neck Company Inc. and Forest Creek Ventures, Inc. will have thirty days to exercise their right of first refusal. This same time limitation applies to K4C6R's right of first refusal as well.

d. There exists no right of first refusal in which the seller finances all of the purchase price of the undeveloped land.

The 29 December 2017 order did not determine all of the claims involved in the action. The remaining claims came on for trial before the Honorable Anna Mills Wagoner at the 19 March 2018 civil jury term in New Hanover Superior Court. The trial court entered an order concluding all claims in dispute between the parties on 5 April 2018.

Defendants filed notice of appeal from the Honorable Judge Charles H. Henry's order on 4 May 2018.

## II. Discussion

On appeal, defendants argue the trial court erroneously interpreted the ROFR in its 29 December 2017 order because: (1) conclusion of law 5(a) could be read to hold the ROFR applies to offers to purchase both developed and undeveloped land *only if* the offer specifies the amount designated to purchase the undeveloped property; (2) the parties' ROFR is not limited to cash payment offers; and (3) the division agreement does not state that there is no ROFR if the seller finances all of the purchase price of the undeveloped land. We address each argument in turn.

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)).

"The construction of a contract is a matter of law for the courts when the language is plain and unambiguous." *Gillespie v. DeWitt*, 53 N.C. App. 252, 266, 280 S.E.2d 736, 746 (citations omitted), *disc. rev. denied*, 304 N.C. 390, 285 S.E.2d 832 (1981). Where, as here, the parties "differ as to the interpretation of language[,]" the

language can still be unambiguous. *Walton v. City of Raleigh*, 342 N.C. 879, 881-82, 467 S.E.2d 410, 412 (1996).

The parties do not dispute that the division agreement's provision for a ROFR is unambiguous. We agree. The division agreement provides:

> K4C6R, on the one hand, and PNC and FCV, on the other, each grants the other a right of first refusal with respect to the sale of the undeveloped Forest Creek property, to be triggered by a bona fide third[-]party offer to purchase the undeveloped property, provided, however, that this right of first refusal shall apply only to cash-only sales.

In other words, this provision grants each party a ROFR with respect to the sale of undeveloped Forest Creek property that is triggered by a bona fide third-party offer to purchase the undeveloped property. It does not limit the ROFR to situations where the third-party only offers to purchase undeveloped property. Therefore, a party is not deprived of its ROFR when a third-party offers for both undeveloped and developed Forest Creek property in the same offer. Further, if a third-party does offer for both undeveloped and developed Forest Creek property, that third-party must specify which portion of its offer is allocated for the undeveloped property so that K4C6R on the one hand, and PNC and FCV on the other, have the opportunity to exercise its ROFR as to the undeveloped Forest Creek property. The division agreement then limits this right by utilizing the limiting language "provided, however," explaining that the ROFR is only triggered by cash only sales.

A. <u>Third-Party Offers for Both Developed and Undeveloped Land</u>

As defendants' first issue on appeal, they contend conclusion of law 5(a) is in error because it could be read to hold the ROFR applies to offers to purchase both developed and undeveloped land *only if* the offer allocates the amount of the offer offered to purchase the undeveloped property, even though the division agreement does not contain this limitation. We agree.

According to conclusion of law 5(a),

> the right of first refusal possessed by Porters Neck Company Inc. and Forest Creek Ventures, Inc. is limited to offers that contemplate the cash sale of undeveloped property within the Forest Creek subdivision or the cash sale of developed property and undeveloped property within the Forest Creek subdivision *where the offer delineates the amount of the offer that pertains to the undeveloped property.* This same interpretation applies to K4C6R's right of first refusal as well.

(Emphasis added). Because this conclusion states that the ROFR is limited to: (1) a third-party offer only for undeveloped land; or (2) a third-party offer for both undeveloped and developed land where the offer allocates the amount offered to purchase the undeveloped property, the conclusion erroneously suggests that the division agreement does not provide a ROFR if a third-party offer for both undeveloped and developed land fails to delineate the amount of the offer that pertains to the undeveloped property. This interpretation of the ROFR would go against the purpose of the ROFR, contradict the plain language of the division agreement, and conflict with conclusion of law 5(b).

The purpose of the ROFR in the division agreement is to give either party the right to purchase undeveloped property before it can be sold to a third-party. The plain language of the division agreement supports this purpose, and does not limit offers for both undeveloped and developed land to those offers that allocate the amount of the offer intended to purchase the undeveloped property. Such a limitation cannot be read into the division agreement. Otherwise, a party could be deprived of their ROFR simply by the third-party offeror offering for both undeveloped and developed land, and failing to allocate the funds offered between the two types of land. This result would create a loophole in conflict with conclusion of law 5(b), which concludes: "The Division Agreement requires that in order to entertain any 'cash only' offers that contemplate the sale of any undeveloped property, the offeror must allocate the amount being offered for the undeveloped property so a party can decide whether to exercise its right of first refusal."

Therefore, because we agree with defendant that there is a potential for conclusion of law 5(a) to be read as causing the order to be inconsistent both with the agreement's purpose, plain language, and conclusion of law 5(b), we hold that to the extent conclusion of law 5(a) could be read to say the ROFR applies to offers to purchase both developed and undeveloped land only if the offer delineates the amount designated to the undeveloped property, it is reversed. In all other respects, it is affirmed.

### B. Cash Sales

Next, defendants argue the trial court's conclusion of law 5(a) that the parties' ROFR is limited to third-party offeror's cash payment offers is erroneous because the division agreement's provision that the "right of first refusal shall apply only to cash-only sales" should be interpreted to mean that the party exercising the ROFR must pay cash to purchase the property at issue. We disagree.

The plain language of the division agreement's requirement that the "right of first refusal shall apply only to cash-only sales" clearly provides that the parties' ROFR only applies when a third-party offeror makes a cash offer to purchase undeveloped property. Defendants' argument that this plain language interpretation undermines the parties' intent is without merit. "The intent of the parties is determined by examining the plain language of the contract[,]" *Brown v. Ginn*, 181 N.C. App. 563, 567, 640 S.E.2d 787, 790, *disc. rev. denied*, 361 N.C. 350, 645 S.E.2d 766 (2007), which, here, plainly limits the ROFR's applicability to cash only sales. Accordingly, defendants' argument is without merit.

### C. Seller-Financing

Because the trial court did not err in concluding that the division agreement limits the parties' ROFR to third-party offers of cash payment, it follows that defendants' third argument, that the trial court erred by limiting the parties' right of first refusal to offers not involving seller-financing, as described by conclusion of law

5(d), is without merit. The agreement explicitly limits the ROFR's applicability to cash only sales; thus, there exists no right of first refusal in which the seller finances all of the purchase price of the undeveloped land.

### III.     Conclusion

For the foregoing reasons, we affirm the trial court's order in part, and reverse in part to the extent that conclusion of law 5(a) could be read to hold that the division agreement's ROFR only applies to offers to purchase *both* developed and undeveloped property *only if* the offer delineates the amount designated to the undeveloped property.

AFFIRMED IN PART, REVERSED IN PART.

Judge BRYANT concurs.

Judge DILLON concurs in part and dissents in part by separate opinion.

DILLON, Judge, concurring in part and dissenting in part.

Plaintiff and Defendant were partners in a partially-developed subdivision, known as Forest Creek.[1]  Because of a dispute, the parties entered into a division agreement which provided, in relevant part, that each would receive about half of the developed and undeveloped properties in Forest Creek.  The division agreement contained a right of first refusal ("ROFR"), to apply to "cash-only sales" of the "undeveloped Forest Creek property."  That is, the ROFR granted each party the first right to purchase the other party's undeveloped property in Forest Creek should the other party ever decide to sell it.  The ROFR did not apply to any of the developed property.  Sometime later, Plaintiff received an offer from a third party to purchase both its *developed and undeveloped* Forest Creek property.  A question presented is whether such an offer triggers the ROFR.

The majority holds that the ROFR is triggered where Plaintiff agrees to sell its undeveloped property (burdened by the ROFR) along with its developed property (unburdened by the ROFR) to a third party; that, to exercise the ROFR, Defendant is only required to purchase Plaintiff's undeveloped property; and that, to accommodate Defendant's purchase, should Defendant exercise its ROFR, Plaintiff and the third party must delineate what portion of the purchase price in their contract is attributable to the undeveloped property.

---

[1] They were also partners in another subdivision, which is not the subject of this present dispute.

I agree that the ROFR is triggered where Plaintiff agrees to sell its undeveloped property as part of a package deal to a third party, but I disagree with the remedy fashioned by the majority. For the reasons stated below, I conclude that, to exercise the ROFR, Defendant must generally match the third-party offer, by agreeing to purchase both Plaintiff's developed and undeveloped properties, for the price agreed to in the third-party offer. But if Defendant can show that the packaging of the properties was done by Plaintiff in bad faith, the Defendant may exercise its ROFR by purchasing the undeveloped property alone for its fair market value.

The majority further holds that the ROFR is *never* triggered where the third-party offer involves any amount of seller financing, based on the "cash-only" language. Though I generally agree with the majority on this point, for the reasons stated in section II. below, I conclude that the ROFR may *also* be triggered where a financing provision is included by Plaintiff in a deal with a third-party in bad faith.

## I. Right of First Refusal

North Carolina allows ROFR's, also known as preemptive rights. *Smith v. Mitchell*, 301 N.C. 58, 61, 269 S.E.2d 608, 610-11 (1980). However, to be enforceable, the ROFR must be "reasonable," as a ROFR is a restraint on alienation, which are generally disfavored in the law. *Id.* at 62, 269 S.E.2d at 611.

North Carolina has yet to opine as to whether and how a ROFR is triggered when "the owner of the property attempts to sell [the property burdened by the

2

ROFR] as part of a larger package of properties and the preemptive right agreement is silent on this matter." 1 Webster's Real Estate Law in North Carolina § 9.04 (2017). Nationally, "[c]ourts have chosen from among five different forms of relief in resolving [this] problem." Bernard Daskal, *NOTE: RIGHTS OF FIRST REFUSAL AND THE PACKAGE DEAL*, 22 Fordham Urb. L.J. 461, *469 (1995).

One approach, followed most notably by the Nevada Supreme Court, holds that the ROFR is not triggered at all where the owner of land burdened by a ROFR contracts to sell the land with other land: the right-holder precludes himself from exercising such a right by failing to account for this situation in the agreement which grants him the ROFR. *See Crow-Spieker v. Helms Constr.*, 731 P.2d 348 (Nev. 1987). One criticism with this approach is that a seller of burdened property could avoid triggering the ROFR when selling burdened property by simply including some nominal, unburdened property as part of the deal with the third-party offeror, thereby bypassing the obligation of having to offer the property first to the right-holder.

A second approach also holds that the ROFR is not triggered *but that* the right-holder does have the right to enjoin the sale to the third-party. *See, e.g., Manella v. Brown Co.*, 537 F. Supp. 1226, 1229 (D. Mass. 1982); *see also Chapman v. Mutual Life Ins. Co.*, 800 P.2d 1147, 1152 (Wyo. 1990); *Myers v. Lovetinsky*, 189 N.W.2d 571, 576 (Iowa 1971). That is, under this approach, the ROFR right-holder would have no

right to purchase the burdened land; but he could seek an injunction to prevent the seller from selling to a third party. This approach, though, heightens the restraint on alienation. It may be that the seller *wants* to sell all his property, not just the burdened portion, or may have a difficult time selling all his property if it must be broken up. Further there may be an economic benefit of selling the burdened property with the unburdened property that would be lost if the seller was not able to sell all his property to a single buyer.

The third approach recognizes that the ROFR *is* triggered and that the right-holder's remedy is to seek specific performance to purchase the burdened property *without having any obligation to purchase the unburdened property. See, e.g., Pantry Pride Enters. v. Stop & Shop Cos.*, 806 F.2d 1227, 1229 (4th Cir. 1986); *see also Berry-Iverson Co. v. Johnson*, 242 N.W.2d 126, 134 (N.D. 1976). However, jurisdictions following this approach differ on *how* to establish the price for the burdened land alone, since triggering offers from third parties often do not break down the price between the burdened and unburdened properties. *Id.* For instance, a California court has held that, to exercise his ROFR in the burdened property, the price to be paid by the right-holder is its fair market value, irrespective of whether the third party offered a fair market value for the entire package. *See Maron v. Howard*, 258 Cal App. 2d 473, 488 (1968). The Michigan Supreme Court, though, has held that

the right-holder must pay the pro rata portion attributable to the burdened property of the price offered by the third party for the entire package.[2]

It is this third approach which the majority follows in the present case. However, I have not found a case which follows the approach the majority takes in *establishing the price* Defendant must pay for the burdened property to exercise its ROFR. Specifically, the majority directs Plaintiff and the third-party offeror to determine which portion of the purchase price in the triggering offer is attributable to the burdened property. This approach is problematic, in my view, for a number of reasons. First, Plaintiff could easily thwart Defendant's right simply by attributing an unreasonably greater portion of the purchase price to the burdened property. On the other hand, even if Plaintiff made an "honest" pro rata delineation, this approach fails to recognize the possibility that Plaintiff was willing to sell multiple properties at a discount if sold together. *See, e.g., Smith v. Troxler*, 90 S.E.2d 482, 488 (S.C. 1955) (stating that a seller should "not be compelled to sell one of these lots if he only desired to sell them as a whole").

---

[2] Suppose that a third party offered the seller $3 million for burdened and unburdened property and suppose that the unburdened property was worth twice as much as the burdened property. Under the California approach, the right-holder would have the right to purchase the burdened property for its fair market value, taking no account of the $3 million offer. Under the Michigan approach, the right-holder would have the right to purchase the burdened property for $2 million, as this assumes that $2 million of the purchase price is attributable to the burdened property and $1 million is attributable to the unburdened property.

5

The fourth approach[3] is similar to the third approach, recognizing that the ROFR provision is triggered, but that the right-holder must agree to purchase the *entire package of properties*, even those not burdened by the ROFR. *See Capalongo v. Giles*, 425 N.Y.S.2d 225, 228 (N.Y. Sup. Ct. 1980), *rev'd on other grounds* 425 N.Y.S.2d 225 (1981); *see also First Nat'l Exch. Bank v. Roanoke Oil Co., Inc.*, 192 S.E. 764 (Va. 1937) (recognizing the right-holder's right to purchase the burdened and unburdened lands where a third party has offered to purchase both as a package). This approach, in essence, applies a "mirror image" rule. *See Bramble v. Thomas*, 914 A.2d 136, 144 (Md. Ct. App. 2007) (applying "mirror image rule" to the exercise of a ROFR); *Miller v. LeSea Broad*, 87 F.3d 224, 226 (7th Cir. 1996) (endorsing a mirror image rule in the context of a ROFR).

For the following reasons, I believe that this fourth approach is more in harmony with North Carolina law. To be sure, this issue is one of first impression in North Carolina. And in fashioning a rule, we must remember that ROFR's are restraints against alienation, which are generally disfavored in our State. *See Smith*, 301 N.C. at 62, 269 S.E.2d at 611. We must also remember that any seller who attempts to sell land burdened by a ROFR to a third party has a duty of good faith

---

[3] The law review article cites this fourth approach as its fifth approach. The article describes as its fourth approach the remedy generally available in any contract claim, the right to seek monetary damages rather than specific performance, citing a Kansas Supreme Court opinion. *Anderson v. Armour & Co.*, 473 P.2d 84, 89 (Kan. 1970). I believe that this remedy is available in lieu of specific performance, where a ROFR provision as been breached.

and fair dealing to the right-holder. *See, e.g., Blondell v. Ahmed*, 247 N.C. App. 480, 484, 786 S.E.2d 405, ___ (2016), *aff'd per curiam*, 370 N.C. 82, 804 S.E.2d 183 (2017) (recognizing that every contract includes an implied covenant of good faith and fair dealing).

I conclude that a right-holder must match *all* of the terms of the third-party offer, applying a "mirror image" rule, *unless* the landowner packages the burdened property with unburdened property in bad faith. *See Weber v. Wilde*, 575 P.2d 1053, 1055 (Utah 1978) (implying that when terms are added in good faith to a triggering offer, and not with the ulterior purpose of defeating a ROFR, the terms of the triggering offer must be matched exactly); *Brownies Creek v. Asher Coal*, 417 S.W.2d 249, 252 (Ky. 1967) (holding that the "defeat of the [ROFR] should not be allowed by use of special, peculiar terms or conditions not made in good faith"). This approach recognizes our policy that ROFR's should be construed as to provide the least impediment on a seller's right to alienate property. Also, this approach is harmonious with the general contract principle that a "meeting of the minds [] requires an offer and acceptance in the exact terms[.]" *Normile v. Miller*, 313 N.C. 98, 103, 326 S.E.2d 11, 15 (1985). And, at the same time, this approach recognizes that any contract provision contains an implied duty of good faith and fair dealing.

Therefore, I conclude that in the present case, where the ROFR provision is silent on package sales, there is a strong presumption that Defendant may only

exercise its ROFR by matching the terms of the triggering offer. 1 Webster's Real Estate Law in North Carolina § 9.04 (2017) (defining a preemptive right as the right-holder having the right "*to match* bona fide offers" (emphasis added)). But I also conclude that this presumption may be overcome by Defendant – whereby Defendant may be allowed to exercise the ROFR by purchasing *only* the burdened property – if it shows that Plaintiff packaged the burdened property with the unburdened property in bad faith.

## II. "Cash-Only"/Seller Financing

The majority concludes that the ROFR is only triggered by third-party offers that are for cash; i.e., offers that do not require a trade or any amount of seller financing. It could be argued that the "cash-only" provision in the ROFR at issue does not prevent the ROFR from triggering where a triggering offer includes seller financing, but that the "cash-only" language only requires that Defendant make a cash tender of equal value to properly exercise the ROFR. But it could also be argued that the parties meant for the ROFR to be triggered only where Plaintiff has accepted a "cash-only" offer because there may be situations where Plaintiff may want to employ seller financing for a portion of the price for tax reasons or other reasons. This ambiguity should be resolved by strictly construing the provision against creating a restraint on alienation. As such, I *generally* agree with the majority that the ROFR is only triggered where the third-party offer is a cash-only offer. But I

conclude that the ROFR may *also* be triggered even where a third-party offer is not for all cash *if* the alternate form of payment in the triggering offer is included in bad faith. In such case, Defendant should be allowed to purchase the property for an equivalent value in cash.

I do note that the trial court's conclusions are inconsistent. Specifically, while paragraph 5(a) of the order concludes that only cash sales trigger the ROFR, 5(d) concludes that the ROFR fails to trigger only where "the seller finances *all of the purchase price*[.]" That is, 5(a) restricts the right of first refusal to cash-only deals, but 5(d) seems to allow for the ROFR to be triggered even where the seller agrees to finance a portion (but not all) of the purchase price. I would reverse these inconsistent conclusions based on my view that only cash sales trigger the ROFR, except where a non-cash tender provision is included in a triggering offer in bad faith.