DILLON, Judge, concurring in part and dissenting in part.
Plaintiff and Defendant were partners in a partially-developed subdivision, known as Forest Creek.[1] Because of a dispute, the parties entered into a division agreement which provided, in relevant part, that each would receive about half of the developed and undeveloped properties in Forest Creek. The division agreement contained a right of first refusal ("ROFR"), to apply to "cash-only sales" of the "undeveloped Forest Creek property." That is, the ROFR granted each party the first right to purchase the other party's undeveloped property in Forest Creek should the other party ever decide to sell it. The ROFR did not apply to any of the developed property. Sometime later, Plaintiff received an offer from a third party to purchase both its developed and undeveloped Forest Creek property. A question presented is whether such an offer triggers the ROFR.
The majority holds that the ROFR is triggered where Plaintiff agrees to sell its undeveloped property (burdened by the ROFR) along with its developed property (unburdened by the ROFR) to a third party; that, to exercise the ROFR, Defendant is only required to purchase Plaintiff's undeveloped property; and that, to accommodate Defendant's purchase, should Defendant exercise its ROFR, Plaintiff and the third party must delineate what portion of the purchase price in their contract is attributable to the undeveloped property.
I agree that the ROFR is triggered where Plaintiff agrees to sell its undeveloped property as part of a package deal to a third party, but I disagree with the remedy fashioned by the majority. For the reasons stated below, I conclude that, to exercise the ROFR, Defendant must generally match the third-party offer, by agreeing to purchase both Plaintiff's developed and undeveloped properties, for the price agreed to in the third-party offer. But if Defendant can show that the packaging of the properties was done by Plaintiff in bad faith, the Defendant may exercise its ROFR by purchasing the undeveloped property alone for its fair market value.
The majority further holds that the ROFR is never triggered where the third-party offer involves any amount of seller financing, based on the "cash-only" language. Though I generally agree with the majority on this point, for the reasons stated in section II. below, I conclude that the ROFR may also be triggered where a financing provision is included by Plaintiff in a deal with a third-party in bad faith.
I. Right of First Refusal
North Carolina allows ROFR's, also known as preemptive rights. Smith v. Mitchell , 301 N.C. 58, 61, 269 S.E.2d 608, 610-11 (1980). However, to be enforceable, the ROFR must be "reasonable," as a ROFR is a restraint on alienation, which are generally disfavored in the law. Id. at 62, 269 S.E.2d at 611.
North Carolina has yet to opine as to whether and how a ROFR is triggered when "the owner of the property attempts to sell [the property burdened by the ROFR] as part of a larger package of properties and the preemptive right agreement is silent on this matter." 1 Webster's Real Estate Law in North Carolina § 9.04 (2017). Nationally, "[c]ourts have chosen from among five different forms of relief in resolving [this] problem." Bernard Daskal, NOTE: RIGHTS OF FIRST REFUSAL AND THE PACKAGE DEAL , 22 Fordham Urb. L.J. 461, *469 (1995).
One approach, followed most notably by the Nevada Supreme Court, holds that the ROFR is not triggered at all where the owner of land burdened by a ROFR contracts to sell the land with other land: the right-holder precludes himself from exercising such a right by failing to account for this situation in the agreement which grants him *683 the ROFR. See Crow-Spieker v. Helms Constr. , 103 Nev. 1, 731 P.2d 348 (1987). One criticism with this approach is that a seller of burdened property could avoid triggering the ROFR when selling burdened property by simply including some nominal, unburdened property as part of the deal with the third-party offeror, thereby bypassing the obligation of having to offer the property first to the right-holder.
A second approach also holds that the ROFR is not triggered but that the right-holder does have the right to enjoin the sale to the third-party. See, e.g., Manella v. Brown Co. , 537 F. Supp. 1226, 1229 (D. Mass. 1982) ; see also Chapman v. Mutual Life Ins. Co. , 800 P.2d 1147, 1152 (Wyo. 1990) ; Myers v. Lovetinsky , 189 N.W.2d 571, 576 (Iowa 1971). That is, under this approach, the ROFR right-holder would have no right to purchase the burdened land; but he could seek an injunction to prevent the seller from selling to a third party. This approach, though, heightens the restraint on alienation. It may be that the seller wants to sell all his property, not just the burdened portion, or may have a difficult time selling all his property if it must be broken up. Further there may be an economic benefit of selling the burdened property with the unburdened property that would be lost if the seller was not able to sell all his property to a single buyer.
The third approach recognizes that the ROFR is triggered and that the right-holder's remedy is to seek specific performance to purchase the burdened property without having any obligation to purchase the unburdened property . See, e.g., Pantry Pride Enters. v. Stop & Shop Cos. , 806 F.2d 1227, 1229 (4th Cir. 1986) ; see also Berry-Iverson Co. v. Johnson , 242 N.W.2d 126, 134 (N.D. 1976). However, jurisdictions following this approach differ on how to establish the price for the burdened land alone, since triggering offers from third parties often do not break down the price between the burdened and unburdened properties. Id. For instance, a California court has held that, to exercise his ROFR in the burdened property, the price to be paid by the right-holder is its fair market value, irrespective of whether the third party offered a fair market value for the entire package. See Maron v. Howard , 258 Cal App. 2d 473, 488, 66 Cal.Rptr. 70 (1968). The Michigan Supreme Court, though, has held that the right-holder must pay the pro rata portion attributable to the burdened property of the price offered by the third party for the entire package.[2]
It is this third approach which the majority follows in the present case. However, I have not found a case which follows the approach the majority takes in establishing the price Defendant must pay for the burdened property to exercise its ROFR. Specifically, the majority directs Plaintiff and the third-party offeror to determine which portion of the purchase price in the triggering offer is attributable to the burdened property. This approach is problematic, in my view, for a number of reasons. First, Plaintiff could easily thwart Defendant's right simply by attributing an unreasonably greater portion of the purchase price to the burdened property. On the other hand, even if Plaintiff made an "honest" pro rata delineation, this approach fails to recognize the possibility that Plaintiff was willing to sell multiple properties at a discount if sold together. See, e.g., Smith v. Traxler , 228 S.C. 418, 90 S.E.2d 482, 488 (1955) (stating that a seller should "not be compelled to sell one of these lots if he only desired to sell them as a whole").
The fourth approach[3] is similar to the third approach, recognizing that the ROFR
*684 provision is triggered, but that the right-holder must agree to purchase the entire package of properties , even those not burdened by the ROFR. See Capalongo v. Giles , 102 Misc.2d 1060, 425 N.Y.S.2d 225, 228 (1980), rev'd on other grounds 102 Misc.2d 1060, 425 N.Y.S.2d 225 (1980) ; see also First Nat'l Exch. Bank v. Roanoke Oil Co., Inc. , 169 Va. 99, 192 S.E. 764 (1937) (recognizing the right-holder's right to purchase the burdened and unburdened lands where a third party has offered to purchase both as a package). This approach, in essence, applies a "mirror image" rule. See Bramble, Inc. v. Thomas , 396 Md. 443, 914 A.2d 136, 144 (2007) (applying "mirror image rule" to the exercise of a ROFR); Miller v. LeSea Broadcasting , 87 F.3d 224, 226 (7th Cir. 1996) (endorsing a mirror image rule in the context of a ROFR).
For the following reasons, I believe that this fourth approach is more in harmony with North Carolina law. To be sure, this issue is one of first impression in North Carolina. And in fashioning a rule, we must remember that ROFR's are restraints against alienation, which are generally disfavored in our State. See Smith , 301 N.C. at 62, 269 S.E.2d at 611. We must also remember that any seller who attempts to sell land burdened by a ROFR to a third party has a duty of good faith and fair dealing to the right-holder. See, e.g., Blondell v. Ahmed , 247 N.C. App. 480, 484, 786 S.E.2d 405, 407-08 (2016), aff'd per curiam , 370 N.C. 82, 804 S.E.2d 183 (2017) (recognizing that every contract includes an implied covenant of good faith and fair dealing).
I conclude that a right-holder must match all of the terms of the third-party offer, applying a "mirror image" rule, unless the landowner packages the burdened property with unburdened property in bad faith. See Weber Meadow-View Corp. v. Wilde , 575 P.2d 1053, 1055 (Utah 1978) (implying that when terms are added in good faith to a triggering offer, and not with the ulterior purpose of defeating a ROFR, the terms of the triggering offer must be matched exactly); Brownies Creek v. Asher Coal , 417 S.W.2d 249, 252 (Ky. 1967) (holding that the "defeat of the [ROFR] should not be allowed by use of special, peculiar terms or conditions not made in good faith"). This approach recognizes our policy that ROFR's should be construed as to provide the least impediment on a seller's right to alienate property. Also, this approach is harmonious with the general contract principle that a "meeting of the minds [ ] requires an offer and acceptance in the exact terms[.]" Normile v. Miller , 313 N.C. 98, 103, 326 S.E.2d 11, 15 (1985). And, at the same time, this approach recognizes that any contract provision contains an implied duty of good faith and fair dealing.
Therefore, I conclude that in the present case, where the ROFR provision is silent on package sales, there is a strong presumption that Defendant may only exercise its ROFR by matching the terms of the triggering offer. 1 Webster's Real Estate Law in North Carolina § 9.04 (2017) (defining a preemptive right as the right-holder having the right "to match bona fide offers" (emphasis added)). But I also conclude that this presumption may be overcome by Defendant - whereby Defendant may be allowed to exercise the ROFR by purchasing only the burdened property - if it shows that Plaintiff packaged the burdened property with the unburdened property in bad faith.
II. "Cash-Only"/Seller Financing
The majority concludes that the ROFR is only triggered by third-party offers that are for cash; i.e., offers that do not require a trade or any amount of seller financing. It could be argued that the "cash-only" provision in the ROFR at issue does not prevent the ROFR from triggering where a triggering offer includes seller financing, but that the "cash-only" language only requires that Defendant make a cash tender of equal value to properly exercise the ROFR. But it could also be argued that the parties meant for the ROFR to be triggered only where Plaintiff has accepted a "cash-only" offer because there may be situations where Plaintiff may want to employ seller financing for a portion *685 of the price for tax reasons or other reasons. This ambiguity should be resolved by strictly construing the provision against creating a restraint on alienation. As such, I generally agree with the majority that the ROFR is only triggered where the third-party offer is a cash-only offer. But I conclude that the ROFR may also be triggered even where a third-party offer is not for all cash if the alternate form of payment in the triggering offer is included in bad faith. In such case, Defendant should be allowed to purchase the property for an equivalent value in cash.
I do note that the trial court's conclusions are inconsistent. Specifically, while paragraph 5(a) of the order concludes that only cash sales trigger the ROFR, 5(d) concludes that the ROFR fails to trigger only where "the seller finances all of the purchase price [.]" That is, 5(a) restricts the right of first refusal to cash-only deals, but 5(d) seems to allow for the ROFR to be triggered even where the seller agrees to finance a portion (but not all) of the purchase price. I would reverse these inconsistent conclusions based on my view that only cash sales trigger the ROFR, except where a non-cash tender provision is included in a triggering offer in bad faith.

They were also partners in another subdivision, which is not the subject of this present dispute.

Suppose that a third party offered the seller $ 3 million for burdened and unburdened property and suppose that the unburdened property was worth twice as much as the burdened property. Under the California approach, the right-holder would have the right to purchase the burdened property for its fair market value, taking no account of the $ 3 million offer. Under the Michigan approach, the right-holder would have the right to purchase the burdened property for $ 2 million, as this assumes that $ 2 million of the purchase price is attributable to the burdened property and $ 1 million is attributable to the unburdened property.

The law review article cites this fourth approach as its fifth approach. The article describes as its fourth approach the remedy generally available in any contract claim, the right to seek monetary damages rather than specific performance, citing a Kansas Supreme Court opinion. Anderson v. Armour & Co. , 205 Kan. 801, 473 P.2d 84, 89 (1970). I believe that this remedy is available in lieu of specific performance, where a ROFR provision as been breached.